[Civ. No. 207.  Third Appellate District.—May 15, 1906.]

## P. S. DORRIS and WM. J. DORRIS, Respondents, v. LAURA J. McMANUS et al., Defendants; C. BOHNERT, Appellant.

ACTION TO QUIET TITLE—PLEA OF FRAUDULENT TRANSFER—INSUFFICIENT ANSWER.—In an action to quiet title derived from a grantee of a firm, an answer setting up a pending action against such firm upon a note, and that if defendant obtained judgment therein he would bring another action to set aside the transfer as a fraud upon the creditors of the firm, which did not state the facts rendering the transfer fraudulent, nor that the debt evidenced by the note sued upon accrued before the transfer was made, nor that the defendant was, or could be, in a position to bring an action to set it aside, is insufficient to state a defense.

ID.—FRAUD NOT PRESUMED—PLEADING AND PROOF—SUPPORT OF FINDING—CONSIDERATION OF DEED.—Fraud is odious, and is never to be presumed. Parties seeking to annul a contract or transfer for fraud must clearly plead and prove the facts constituting legal fraud, actual or constructive. Where a fraudulent transfer was neither pleaded nor directly proved, a finding negativing it is supported, and is not assailable by inference from the smallness of the consideration expressed in the deed from the grantee of the firm to the plaintiffs, which cannot concern the defendant suing as creditor of the firm.

ID.—QUIETING TITLE AGAINST ASSERTED CLAIM OF FRAUDULENT TRANS-FER.—An action will lie to quiet title of the plaintiffs against an asserted right of a defendant based upon a fraudulent transfer.

ID.—TRIAL NOT TO BE DEFERRED.—The court was not required to defer the trial of the cause until the suit brought upon the note and the suit intended to be brought to set aside the transfer to plaintiffs had both been determined.

ID.—JUDGMENT QUIETING TITLE—ANCILLARY INJUNCTION—EFFECT AS AN ESTOPPEL—REVIEW UPON APPEAL.—Upon appeal from a judgment quieting the title of plaintiffs against the adverse claim of appellant, and awarding an injunction as ancillary to the principal relief granted, against any further adverse claim, or the maintenance of any action to throw a cloud upon plaintiff's title, this court will not in advance determine the effect of the injunction as an estoppel from bringing a future action to contest the validity of the transfer to plaintiffs; but if the merely ancillary injunction was unnecessary to make the relief granted to plaintiffs effectual, it could not injure the appellant.

APPEAL from a judgment of the Superior Court of Modoc County, and from an order denying a new trial. N. D. Arnot, Judge presiding.

The facts are stated in the opinion of the court.

J. H. Magaffey, and E. C. Bonner, for Appellant.

G. F. Harris, Jamison & Adams, and Gillis & Tapscott, for Respondents.

McLAUGHLIN, J.—Action to quiet title. The complaint contains the averments usual in this class of actions, all of which are denied in the answer. In addition to such denials, the answer contains affirmative allegations, reciting that on the eleventh day of January, 1901, appellant commenced an action in the superior court of Modoc county, against P. A. Dorris and C. J. Dorris, a copartnership styled P. A. Dorris & Bro., upon a promissory note executed to appellant by said partnership, for the principal sum of $2,780, and interest thereon, which action was then pending and undetermined. That appellant, in the event that he obtained judgment in said action, which had then been pending more than two years and nine months, intended to and would institute an-

3 Cal. App.—37

other action to set aside the transfer of the property in dispute to plaintiffs, on the ground that at the time such transfer was made, said property belonged to, and was owned by said partnership, and the members thereof, who procured the execution of said transfer to plaintiffs for the purpose of hindering, delaying and defrauding the creditors of said firm. The facts which might render such transfer fraudulent were not stated, nor was there any attempt to show that an action to set it aside would rest on a substantial, or even plausible basis. There was no positive statement that the partnership, or any individual member thereof, ever owned any part of the land, nor was there any averment tending, in the remotest degree, to show that the debt, evidenced by the promissory note sued upon, accrued before the transfer was made, or that appellant was or could be in a position to bring an action to set it aside. (*First Nat. Bank* v. *Eastman,* 144 Cal. 490, [103 Am. St. Rep. 95, 77 Pac. 1043].) No light was thrown on the probability of appellant's success in the pending suit, and surmise was left groping as to the likelihood of his obtaining a favorable judgment in the action which would be commenced at some indefinite future date, if the stated contingency arose, and appellant did not recede from his then existing intention. In short, the affirmative defense contains nothing to show that the transfer to plaintiff was probably, or even possibly, void or voidable as to appellant. Boiled down to its essence, it amounts to no more than a bald statement that *if* appellant prevailed in a pending suit, he intended to bring another action upon indicated legal grounds, the judgment in which *might,* perchance, enable creditors of the firm, at the time the transfer was made, to make the property in controversy subject to seizure and sale in satisfaction of their demands. It is apparent that this cannot be distorted or twisted into any semblance of a claim of title, present or future, vested or contingent, and that imagination must be given full rein, in order to draw therefrom an inference that respondent's title can ever be affected or impaired through appellant's agency. In order to reach the conclusion that appellant's rights, whatever they may be, will ever assume tangible form as a chain of title adverse to respondents, we must indulge in conjecture upon conjecture, without any statement of facts justifying a random guess. Pleadings are

construed most strongly against the pleader, but if the rule was reversed, the affirmative matter pleaded in the answer would still lack many elements necessary to constitute an equitable or any form of defense.

The only issue, therefore, was whether respondent's claim of ownership was well founded when tested in the crucible of appellant's admitted assertion of right. The court, however, not only found on such issue, but also found that the transfer to plaintiffs was not fraudulent, and adds specific findings reciting certain facts and circumstances preceding and attending the execution of such transfer. Appellant assails the sufficiency of the evidence to support the findings, but as they all relate to the main issue of title, and the validity of the transfer to plaintiffs, which was not properly an issue in the case, nothing will be lost if we proceed to an analysis of the evidence without more particular mention of the objections urged.

The title to more than two thousand eight hundred acres of land is here involved, and the evidence shows without conflict that neither P. A. nor C. J. Dorris, nor the firm of which they were members, ever had any apparent, tangible, legal or equitable right or title, to more than three hundred and twenty acres thereof. Title to the bulk of this large area was acquired through letters patent issued in 1881 and 1882 by the state of California to Jerome Churchill, the immediate grantor of the plaintiffs. The greater portion of the remainder was conveyed to said Churchill prior to the year 1885, by parties who held under patents from the general government. P. A. and C. J. Dorris acquired title to three hundred and twenty acres of the land in dispute, through patents from the last-mentioned source, but conveyed the same to Churchill in 1882, for a stated consideration of $7,013. It will thus be seen that plaintiff's grantor acquired title to most of the land from primary sources, and that he held and possessed all of it for many years before the deed to plaintiffs was executed.

On June 29, 1900, Churchill, as party of the first part, and P. A. and C. J. Dorris, of the firm of P. A. Dorris & Bro., as parties of the second part, entered into an agreement, the preamble of which recites that the parties thereto had for years past had unsettled accounts, and that the second parties were indebted to the first party in a large sum of money, and

that they mutually desired to effect a full and final settlement of all business matters between them. It was further recited in said preamble that the said second parties theretofore had a ''contingent interest in certain property in the possession, and owned and controlled'' by the party of the first part, and that in an agreement entered in 1898, the first party agreed to sell, and the second parties to buy, certain real estate for the sum of $30,000, payable on a date mentioned, and that the latter desired to be relieved from the obligation thus assumed. Following these preliminary recitals the second parties agreed to ''release, remise and convey'' to said party of the first part, all claim, right, title and interest held by them, in or to all property, real, personal and mixed, to which said second parties had theretofore made any claim, contingent or otherwise, and particularly all claims accruing under the agreement of 1898. Thereupon, the party of the first part agreed to release the second parties from all claims, demands and indebtedness of every kind and nature, and all parties mutually agreed that this would constitute a full settlement of all demands between them.

On the same day the said second parties executed a quitclaim deed to the lands here in question to Churchill, and the latter conveyed the same to plaintiffs for a stated consideration of ten dollars. Churchill testified that he had been dealing with P. A. and C. J. Dorris, as partners, for twenty-five years, and that at the time of the settlement they owed him about $350,000. He further stated that in the settlement he took all of their property, consisting of six thousand cattle, six hundred horses, and certain ranches in Modoc and Siskiyou counties, of the aggregate value of about $218,000. His testimony was corroborated by his son, and plaintiff P. S. Dorris testified as to the annoyance and detriment suffered by reason of claims against the land made by creditors of P. A. and C. J. Dorris. This was all the evidence presented by respondent, and appellant offered no evidence whatever. The mere statement of the evidence is sufficient to demonstrate that the finding in favor of respondents' title and against appellant's claim must be upheld. And assuming that the case was tried upon the theory that the fraudulent nature of the transfer to plaintiffs was in issue, we think the finding against appellant on this point is fully sustained by the evidence.

Indeed, we think there is no evidence to the contrary. Fraud is odious and is never presumed. The parties seeking to annul any contract, and particularly a transfer of real property, on that ground, must fully and clearly plead and prove the facts constituting legal fraud, actual or constructive. (*Bell* v. *Thompson*, 147 Cal. 693, [82 Pac. 327] ; *De Galindo* v. *De Galindo*, 147 Cal. 81, [81 Pac. 279] ; *People* v. *McKenna*, 81 Cal. 158, [22 Pac. 488] ; *Moore* v. *Copp*, 119 Cal. 436, [51 Pac. 630] ; *Gray* v. *Galpin*, 98 Cal. 635, [33 Pac. 725].) Here, there was not only a failure to plead, but an utter dearth of evidence to prove fraud of any kind. It is said that the consideration mentioned in the deed from Churchill to plaintiffs was clearly inadequate, and hence an inference or presumption of fraud arose from that fact alone. But appellant is not concerned with the adequacy of the consideration passing to Churchill from plaintiffs, but with the *bona fides* and validity of the deed from P. A. and C. J. Dorris to the former. If that transaction was not tainted by fraud, actual or constructive, then it could not matter to appellant whether any consideration, good or valuable, passed to Churchill from his grantees. In testing the validity of the deed to Churchill, the interest of the firm or its members in the lands, the reasons underlying the equitable interest, which was all they could have therein, and many other facts showing why the transfer of such equitable interest to a creditor holding the legal title was fraudulent, would have to be pleaded and proven.

The answer leaves us perplexed and doubtful as to the nature of the pleading and proof upon which his assault on the transfers will be made, and perplexity gives way to bewilderment when appellant, though afforded an opportunity, submitted his case without affording any enlightenment on this point.

It is next contended that an action to quiet title cannot lie against appellant's asserted right, and that the court should have deferred the trial of this cause until the suit which appellant had brought, and the one he intended to bring, had both been determined. Waiving the fact that the answer admits that appellant was claiming an estate and interest in the land adverse to appellants, it seems quite clear to us that this contention cannot be sustained. (Code Civ. Proc., sec. 738; *Head* v. *Fordyce*, 17 Cal. 149; *Castro* v. *Barry*, 79 Cal. 447,

[21 Pac. 946]; *Withers* v. *Jacks,* 79 Cal. 300, [12 Am. St. Rep. 143, 21 Pac. 824]; *Peterson* v. *Gibbs,* 147 Cal. 5, [109 Am. St. Rep. 107, 81 Pac. 121]; *Dranga* v. *Rowe,* 127 Cal. 509, [59 Pac. 944].) It would indeed be strange if persons in the position of respondents could not compel the adjudication of asserted claims as strenuously urged and tenaciously defended as those here contended for by appellant. In addition to decreeing that respondents owned the land and that appellant had no right, title or interest therein, the court awarded a perpetual injunction restraining all of the defendants from setting up or maintaining any action, proceeding or claim under or through which defendants asserted any claim, right, interest, legal or equitable, in or to the property or any portion thereof, "whereby they, or any or either of them, could or might throw any cloud upon the title of said plaintiffs." It is argued that this clause, of itself, is so palpably erroneous as to necessitate reversal, because it prohibits appellant from bringing an action to test the validity of the transfers through which plaintiffs obtained title. *Haggin* v. *Kelley,* 136 Cal. 481, [69 Pac. 140], and *Reiner* v. *Schroeder,* 146 Cal. 416, [80 Pac. 517], are cited in support of the position assumed, but we can find nothing in either case sustaining the proposition. We have neither the right nor the inclination to pass upon questions not before us, and therefore refrain from any comment touching the effect of the judgment here, as an estoppel against further litigation between the same parties touching the title to the premises.

It is enough to say that the injunction is merely ancillary to the principal relief, and if it was unnecessary to make the relief to which respondent was entitled effectual, it could not injure appellant. (*Kittle* v. *Bellegarde,* 86 Cal. 556, [25 Pac. 55]; *Brooks* v. *Calderwood,* 34 Cal. 556; *Axtell* v. *Gerlach,* 67 Cal. 484, [8 Pac. 34]; *Jones* v. *Jones,* 140 Cal. 591, [74 Pac. 143].)

The judgment and order are affirmed.

Buckles, J., and Chipman, P. J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 12, 1906.