[Civ. No. 18549.   First Dist., Div. One.   June 16, 1960.]

THE PEOPLE, Respondent, v. RALPH EDWARD
BERGHOLM, Appellant.

Herron & Winn and James J. Jones, Jr., for Appellant.

John A. Nejedly, District Attorney, and Robert H. Betzenderfer, Deputy District Attorney, for Respondent.

PAULSEN, J. pro tem.*—This is an appeal from a judgment accepting and approving the report of a commissioner made after the abatement of a public nuisance.

Appellant was the owner and operator of a junkyard and after prolonged negotiations and threats of summary abatement by the Board of Supervisors of Contra Costa County, this action was commenced March 26, 1956. An order to show cause was issued and after a number of delays the matter came on for hearing on May 10, 1956. At that time the parties entered into the following stipulation. " 'It Is HEREBY STIPULATED by and between the District Attorney of the County of Contra Costa, on behalf of the People of the State of California, and John L. Garaventa, Esquire, attorney at law, on behalf of Edward Ralph Bergholm, defendant, that the above entitled court may make and enter a judgment in the above entitled cause as follows:

" 'WHEREFORE, It Is ORDERED, ADJUDGED AND DECREED that the premises described in Paragraph I of the complaint on

*Assigned by Chairman of Judicial Council.

file herein are a public nuisance; that the defendant, Edward Ralph Bergholm, be and he is hereby commanded to abate the said public nuisance by removing and demolishing the buildings located on the premises described in Paragraph I of the complaint, and by removing and clearing the said premises of ~~all buildings~~, parts of buildings, automobile carcasses, automobile parts, scrap iron, decayed and rotten upholstery, old and rotten tires, and other miscellaneous junk, and to restore and keep the said premises in a neat, tidy and orderly manner; that a mandatory injunction issue commanding the defendant, as hereinbefore set forth, to accomplish all of the foregoing things before the 17th day of November, 1956.

" 'IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this court expressly reserve jurisdiction to make further order in the premises, including the appointment of a commissioner to do the work in abating the said nuisance in the event that the defendant fails to do so within the time herein limited.

" 'IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this Judgment and Decree is without prejudice to any application by the defendant for a new permit for a wrecking yard on these or any other premises at any future time under statutes and ordinances that may at such time be in effect and applicable.

" 'IT IS FURTHER ORDERED, ADJUDGED AND DECREED that if the court determines, on or after November 17, 1956, that a substantial effort has been made to comply with the orders and judgments of this court, the court reserves jurisdiction to extend time for compliance herewith.'

"IT IS FURTHER STIPULATED that a Writ of Injunction, mandatory in form, may issue pursuant to a judgment as hereinbefore set forth."

The terms of the stipulation were fully set forth and adopted in a judgment entered the same day. No appeal was taken from that judgment and it is now final.

On May 10, 1956, an injunction was issued and served on appellant. Appellant did not comply with the terms of the injunction and after a hearing on January 21, 1957, a judgment was entered holding appellant in contempt of court and fining him $500. By the same judgment Warren R. Lamb, an assistant building inspector, was appointed commissioner to abate the nuisance, and payment of the fine was

suspended on condition that appellant do nothing to interfere with the work of the commissioner. The order appointing the commissioner directed him to do the things described in the stipulation, judgment and injunction, but it contained no instructions as to the method to be employed.

Lamb took an oath of office on January 21, 1957, and the following day entered into an agreement with Joe Sobotka, a general contractor, by which Sobotka was to perform all the work and as compensation therefor was to receive the proceeds from a sale of the materials on the premises.

On January 29, 1957, after Sobotka started the work, appellant filed in this court a petition for a writ of certiorari. The petition was denied without opinion.

On May 1, 1957, Lamb filed his report, stating that the nuisance had been abated; that the work had been done under a contract under which the contractor was to clear the premises in exchange for all material removed and at no cost or expense to appellant; and that the contractor had suffered a net loss of $4,893.40.

Appellant filed objections claiming that Lamb had no authority to act; that if he had general authority to abate the nuisance, he still could not sell the scrap without first petitioning the court for specific authority to do so; that if such authority had been granted, it would have been necessary to make the sale as if under execution. He objected further that Lamb made no attempt to secure bids but selected Sobotka to do the work without any attempt to obtain a more favorable contract; and that if the matter had been handled properly a very substantial profit could have been made for his benefit.

After a hotly contested hearing, reported in more than 300 pages of transcript, the court accepted and approved the report and, among other things, expressly found "That it is true that the Commissioner attempted to get bids on the said work from other persons interested in this type of work, but that the Commissioner was not able to obtain from any other person an offer to do all the work involved; that there were several other persons who were interested in taking away the wrecked automobiles, who would have made cash payments for taking away the wrecked automobiles only; that the full compliance with the Court's order would have involved other and further work which the Commissioner would then have had to hire done; that the arrangement with said Joseph Sobotka was fair, just and equitable and best

protected the interests of the defendant, Edward Ralph Bergholm.''

Appellant contends that (1) the court did not have jurisdiction to appoint a *court* commissioner to do the work; (2) that the court should have appointed a receiver; that if the appointment was that of a receiver it was ineffective because Lamb failed to give an undertaking and therefore did not qualify; (3) that the court erred in not permitting the examination of several witnesses, including Sobotka, pursuant to the provisions of section 2055 of the Code of Civil Procedure; and (4) that the evidence was insufficient to support the findings and order approving the report.

On the question of jurisdiction, respondent asserts that when this court denied the petition for certiorari, it determined that the appointment of Lamb was valid and that the question is now res judicata. There are occasions when such a result follows from the denial of a petition without opinion (*Reilly* v. *Police Court,* 194 Cal. 375 [228 P. 860]). In this case the record does not disclose the reason for the denial, and under such circumstances the action of the court does not constitute a final adjudication of the facts alleged in the petition. (*State Board of Equalization* v. *Superior Court,* 20 Cal.2d 467 [127 P.2d 4]; *Confidential, Inc.* v. *Superior Court,* 157 Cal.App.2d 75, 78 [320 P.2d 546].) It is therefore necessary to consider the argument that the appointment was invalid for lack of jurisdiction.

Appellant contends that Lamb had no power as a court commissioner to abate a nuisance because that power is not included in those enumerated in article VI, section 14 of the California Constitution, and section 259 of the Code of Civil Procedure; that on the authority of *Jackson* v. *Puget Sound Lumber Co.,* 123 Cal. 97 [55 P. 788], the appointment could be construed to be that of a receiver; that if so construed it is still unavailing because Lamb failed to qualify as a receiver.

In the Jackson case, plaintiff sued for money had and received. Defendant filed a counterclaim and, pursuant to a stipulation, the court ordered that the action be '' 'transferred to Stuart S. Wright, court commissioner, for an accounting; said court commissioner to report back to this court the evidence taken, and the balance found due on said accounting.' '' After taking the evidence, Wright resigned as court commissioner and later prepared and filed his report. It was contended on appeal that the resignation terminated Wright's

power to act. The court held that the stipulation and order must be construed to give meaning and effect to the intention of the parties and determined that the appointment was that of a referee. The real significance of that case arises from the fact that the court went to such lengths to give effect to the intention of the parties as expressed in their stipulation. Nothing in the decision supports appellant's contention that the stipulation and order of appointment here *must* be construed to be the appointment of a receiver.

There is nothing in the record that indicates the court intended to appoint a *court* commissioner as that office is described in the laws of this state. The use of that term, as applied to Lamb, was first employed by appellant for the purpose of challenging his authority. It was not used in the stipulation, the judgment, the injunction or the order of appointment; all simply referred to him as a commissioner. The appointee was to perform a particular administrative act and no other powers were necessary. Before the appointment was made, the court had acquired jurisdiction over the subject matter and the parties, appellant had admitted the existence of the nuisance and consented to its abatement, and the court therefore had the power, and it was its duty, to direct someone to act as an arm of the court to carry out its orders. (*Swan* v. *Talbot,* 152 Cal. 142 [94 P. 238, 17 L.R.A. N.S. 1066] ; *Holmes* v. *Anderson,* 90 Cal.App. 276 [265 P. 1010].)

Appellant insists that where a sale is necessary a receiver must be appointed, a petition for authority to sell must be filed and heard after notice, and if after hearing authority to sell is given, the sale must be conducted "upon the notice and in the manner prescribed by law for the sale of such property under execution." (Code Civ. Proc., § 568.5.)

Section 564 of the Code of Civil Procedure provides that "a receiver may be appointed . . . after judgment, to carry the judgment into effect." The section is permissive only and there may be cases where this procedure should be followed to avoid irreparable injury to the parties or an invasion of their constitutional rights. We are satisfied that this is not such a case. One of the principal purposes of a receivership is the preservation of property pending litigation concerning or affecting it, so that the relief ultimately awarded by the judgment may be effective. (42 Cal.Jur.2d, Receivers, § 5.) Ordinarily, receiverships are time-consuming and are not designed to accomplish the prompt action required in the abatement of a nuisance. Inherent in the processes of abatement

is the requirement that the agent of the court act with reasonable expedition but at the same time refrain from acts not contemplated by or not reasonably necessary to the execution of the order. Appellant admitted that he was maintaining a nuisance and that it must be abated. He said nothing about a receiver but stipulated that the court might appoint a commissioner. He was given more than seven months to comply with the order and by his failure to act impliedly consented once more to action by a commissioner. The yard was filled with the carcasses of more than 400 automobiles and great quantities of miscellaneous junk which had been acquired solely for purposes of sale. Under all the circumstances, and particularly in view of the stipulation, we are of the opinion that the court had jurisdiction to proceed as it did. This conclusion is further fortified by the statement of appellant's counsel made at the time of oral argument before this court, when he said that the real purpose of this appeal was to get another opportunity to inquire into the activities of Lamb after his appointment.

Appellant's complaint that he was refused permission to examine certain witnesses under section 2055 of the Code of Civil Procedure is without merit. On two occasions the witness was not claimed to fall within the classes mentioned in the section. When Sobotka was called the court ruled that he was an independent contractor and that the section was not applicable. Appellant contended that Sobotka was an agent of Lamb or the plaintiff. The court felt that there was some doubt concerning the relationship and directed appellant to go ahead and examine the witness as if under that section. The witness was obviously hostile and appellant was given every right that could have been accorded him, including the right of cross-examination and impeachment. He could not have been injured by the ruling.

At the hearing of Lamb's report, which continued for almost three days, appellant attempted to prove that Lamb could have made a very substantial profit for appellant's benefit if he had not awarded the contract to Sobotka. Witnesses were produced who testified that they would have paid more for the scrap metal than Sobotka received from the sale of it. Sobotka was questioned at great length concerning prices, labor and administrative costs, allowances for use and rental of heavy equipment and the manner in which the work was performed.

Appellant complains that Lamb entered into the agreement

with Sobotka the day following his appointment and did not take time to secure the highest bids. He has not directed our attention to any evidence that the prospective buyers would have paid higher prices and would also have performed all the other work. Lamb testified that, as an assistant building inspector, he had been familiar with the problem for many months and had taken part in the negotiations long before the complaint was filed; that four persons had offered to buy the carcasses but did not want to do the other work. The most that appellant can claim for his evidence is that it created a conflict, and the resolution of that conflict was a matter for the trial court.

While the work was progressing, appellant was permitted to remove four automobiles which could be driven, and one Crosby removed a number of automobiles for which he produced evidence of ownership. Also, on one occasion, an item valued at $8.00 was given to someone who was conducting a drive for charity. This was done by Lamb with Sobotka's permission. Appellant complains of the manner in which the Crosby transaction was handled but does not deny Crosby's ownership. He also challenges Lamb's right to make a gift to charity. Before these things happened, Sobotka had agreed to do all the work for all the scrap and it was he who suffered the loss of these items, not appellant.

Sobotka testified that he received $14,174.30 for the scrap. The automobile carcasses had to be cut with torches and the scrap separated from other materials. A house had to be removed, and in order to clean the premises it was necessary to dig large pits to bury the materials that could not be sold or burned. Sobotka testified that the cost of labor, including his own and that of his son, came to $7,855. The largest item of expense was $8,145 for equipment. With other costs, such as social security, insurance, etc., he claimed a loss of $4,893.40.

The court did not make specific findings as to the correctness of each item but from time to time expressed doubt as to some. At one point the court expressed the belief that the labor item should not include the work of Sobotka and his son. At another time it was stated that Sobotka's own equipment should not have been entered for the full amount that would have been required to rent it. However, after a consideration of the whole question, it was the court's view that Sobotka did not make a profit on his contract or at best that his profit was small. The contractor was not required to work for nothing. Our own study of the record indicates that if any profit was

made it was so small that Sobotka was not adequately compensated.

Appellant testified (claiming to be an expert on all phases of the subject) that a substantial profit should have been made. He had more than seven months to do so and failed. The court was justified in rejecting his contentions. The record supports the trial court's view that Lamb was justified in awarding the contract.

Appellant's arguments in this case are based upon the premise that the court was required to operate a business for him and to account meticulously for everything that was done by the contractor. Sobotka's account and actions were not considered for the purpose of determining how much profit, if any, should be paid to appellant. It was admissible to show that Lamb had entered into an honest and fair contract—one that was reasonable and necessary to accomplish the purposes of the order of abatement. Appellant does not claim that Lamb should have hauled the junk to some other location; his complaint is that he did not realize a profit.

If it had been established that Lamb's methods were dishonest, or that Sobotka did, or could have, made an unreasonable profit, a reconsideration of the whole proceeding would be in order. Appellant ignores the fact that Lamb was abating a nuisance and did so without cost to him, other than the loss due to a condition brought about by his own creation of the nuisance and his refusal to act. After a full hearing, the court found "That no undue advantage was taken of the defendant . . . by the Commissioner or by Joseph Sobotka . . ." The evidence was clearly sufficient to support that finding.

The judgment is affirmed.

Bray, P. J., and Duniway, J., concurred.