[Civ. No. 22438. First Dist., Div. One. Sept. 8, 1966.]

FRANCIS A. STEARNS et al., Plaintiffs, Cross-defendants and Respondents, v. LOS ANGELES CITY SCHOOL DISTRICT et al., Defendants, Cross-complainants and Appellants; FELICIEN P. LANDIER et al., Cross-defendants and Respondents.

*Assigned by the Chairman of the Judicial Council.

698

Harold W. Kennedy, County Counsel, and John R. Lamoreaux for Defendants, Cross-complainants and Appellants.

Spurr, Brunner & Nelson, Rawles, Nelson & Golden, John J. Golden and W. H. Brunner for Plaintiffs, Cross-defendants and Respondents.

No appearance for Cross-defendants and Respondents.

SIMS, J. — Los Angeles City School District and Los Angeles City High School District, defendants and cross-complainants, who assert an interest in the property which is the subject of this action as judgment creditors of Felicien P. Landier and Landier Investment Company, have appealed from a judgment and an amended judgment which decreed that title was vested in the plaintiffs hereinafter noted and that the Districts had no interest in the property, and which denied them relief on their cross-complaint, and, as amended, enjoined the Districts from asserting any claim to the property.

The plaintiff and cross-defendant, Redwood Empire Title Company of Mendocino County, concededly only holds record title for the other two plaintiffs and cross-defendants. Plaintiff and cross-defendant Francis A. Stearns' claim to a one-half

interest in the property is predicated upon an agreement with Rose Landier Heiner, deceased. The latter's one-half interest is represented by substituted plaintiff and cross-defendant Jim E. West as executor of her estate. Her acquisition of title is predicated upon a judgment she obtained against Landier and the Company which granted her specific performance of an alleged oral agreement entered into with her husband on behalf of himself and the Company. For convenience and to distinguish her from a prior wife of the judgment debtor, she and her estate will be referred to as Rose.

The Districts also named as cross-defendants the judgment debtors and Honor B. Landier. Honor, an earlier wife of Landier, concededly held a deed of trust on the land in question as security for payments due her from her ex-husband. Her negotiations and transactions in connection with the assignment, enforcement, reassignment and eventual transfer of this deed of trust were attacked by the Districts in their cross-complaint.[1]

The Districts contend that the trial court erred in the following particulars: (1) by vacating an order whereby it had stayed proceedings in Mendocino County pending determination of a prior action which the Districts had commenced in Los Angeles County; (2) by sustaining the demurrers which were interposed by Redwood and Stearns and by Rose to the Districts' original cross-complaint for money damages; (3) by denying the Districts' motion for nonsuit at the conclusion of plaintiffs' case; (4) by admitting evidence of the records and transcript relating to prior actions between Rose and Landier and the Company; (5) by excluding evidence offered by the Districts to show a fraudulent conspiracy between Stearns and Landier; (6) by refusing to submit to an advisory verdict of the jury, as provided in the pretrial order, the issue of whether the manner in which Rose acquired the title of the Company was in fraud of the Districts; (7) by failing to follow the verdict of the jury, which found that Stearns acquired his one-half interest in the property with the intent to benefit Landier, and in entering a contrary judgment which was not supported by substantial evidence; (8) by amending its judgment to grant injunctive relief which had not been sought in the prayer of the complaint or requested at the trial; and (9) by quieting plaintiffs' title to land in excess

[1]The judgment further refers to the lack of interest of another party who was served as a fictitious defendant and defaulted. As this interest would be subordinate to the interests of the Districts, that party is not mentioned in the notice of appeal.

of that described in the *lis pendens* recorded in connection with the action in which Rose secured a judgment establishing her title.

An examination of the record reflects that the court did err in failing to stay the instant action pending determination of the prior action; and that since the evidence does not compel the conclusions which were reached by the trial court and because there were errors in its rulings, the judgment should be reversed.

### Summary of proceedings

The facts reflect that in November 1951 the Districts commenced an action (Los Angeles County Superior Court No. 591996) against Landier and related companies to recover $1,500,000 for alleged irregularities in connection with contracts for the transportation of pupils. On August 17, 1954 a stipulation was entered into whereby the Districts agreed to accept in full satisfaction of their claims, and Landier and the Company agreed to pay the sum of $264,776.86 in installments of $33,097.11 commencing within 60 days of the date of the stipulation and thereafter on October 20th of 1955 and each succeeding year. The agreement provided that in the event of default, judgment would be entered for double the sum due at the time of default.[2]

Three installments were paid on this contract, but Landier and the Company were unable to pay the installment due October 20, 1957. In connection with a request to secure an extension of the time for payment of this installment Landier, on November 5, 1957, submitted a financial statement which showed the ranch property, the subject of this suit, at a value of $375,000 subject only to $56,000 due Honor, as his principal asset. Concededly title to the ranch was in the name of the Company, but he claimed its value by virtue of ownership of all of the stock of the Company. Pursuant to this application the time for payment of the installment was extended until June 30, 1958.

At or about the time of securing the aforementioned extension of time Landier and Rose, whom he had held out as his wife since 1956, had meetings with Landier's attorney concerning his obligation to the Districts, his debt to a bank for

[2]For further details concerning the background of this suit and agreement, and the judgment which is hereinafter referred to, reference is made to *Los Angeles City School Dist.* v. *Landier Inv. Co.* (1960) 177 Cal.App.2d 744 [2 Cal.Rptr. 662], hearing in Supreme Court denied April 6, 1960.

which shares of stock other than those of the Company wer, pledged by him as security, and his obligation to Rose for moneys advanced or to be advanced to assist him financially. On December 26, 1957, Landier and Rose were married, and in January 1958 the attorney prepared a draft of an agreement whereby Landier would undertake to convey the ranch to Rose. This agreement was never executed.

Thereafter, dissension developed between Rose and her husband and on April 16, 1958 she filed an action for divorce, an action to recover damages for assault and battery, and an action against Landier and the Company (Mendocino County Superior Court No. 21860) to require Landier and the Company to convey the ranch to her. A *lis pendens* was filed in connection with the last action on that date.

On November 5, 1958, the Districts secured judgment pursuant to the stipulation filed in the original Los Angeles County action, and on November 21, 1958 an abstract of that judgment was recorded in Mendocino County.

On May 4, 1959 Rose's action to secure specific performance of Landier's oral agreement to convey the land to her came on for trial. On November 24, 1959, findings of fact and conclusions of law in favor of Rose were signed and filed. On January 20, 1960, Landier and the Company filed a notice of appeal. Judgment, however, was not signed and filed until December 30, 1960, on which date a certified copy was also recorded with the Mendocino County recorder.

On January 26, 1960 the attorney for Landier in Rose's action advised an attorney for the Districts of the pendency and status of that action and urged that the Districts intervene.

In March 1961 it was arranged that the appeal in Rose's action would be dismissed, and in April of that year the appeal was dismissed. Rose conveyed the property to Redwood pursuant to a holding agreement that it should hold the property for her and Stearns.

On May 16, 1961, the Districts caused an execution to be levied on the ranch property for the collection of the Los Angeles County judgment, and thereupon on May 22, 1961 commenced an action in Los Angeles County Superior Court (No. 771560) in the nature of a creditor's bill to have various conveyances of the ranch property set aside as having been made in fraud of creditors. The action was against Landier, the Company, Redwood, Rose and others claiming under the Company or Landier. Redwood was served on May 25, 1961, and Rose sometime thereafter. These defendants appeared and

filed a motion for change of venue which was denied. In connection with those proceedings it appeared that Landier, the Company, and Honor, who had all been served, were residents of Los Angeles County. (See *Los Angeles City School Dist.* v. *Redwood Empire Title Co.* (1962) 206 Cal.App.2d 398 [23 Cal.Rptr. 662], passim.)

On July 14, 1961 the present action was filed in Mendocino County Superior Court by Stearns, Redwood and Rose against the Districts and fictitious defendants.

On August 14, 1961 the *Los Angeles* action was amended to make Stearns a party.

On August 17, 1961 the Districts filed a demurrer and motion for stay of proceedings supported by the affidavit of their counsel in the Mendocino County proceedings. By opinion and order filed February 1, 1962, the court ordered "that all further proceedings in this action should be stayed pending final determination of Action No. 771560, in the Superior Court of the State of California, in and for the County of Los Angeles, or until the further order of the Court."

Thereafter, on July 30, 1962, plaintiffs filed their notice of motion to vacate the prior order. By order filed November 13, 1962 this motion was granted and plaintiffs were granted leave to pursue the Mendocino County action.

On August 2, 1962 the District Court of Appeal, Second Appellate District, Division Two, affirmed the order of the Los Angeles County Superior Court which had denied a change of venue to Mendocino County (*Los Angeles City School Dist.* v. *Redwood Empire Title Co., supra,* 206 Cal.App.2d 398).

On December 4, 1962, the Districts filed in this appellate district their petition for a writ of prohibition directed to restraining the court in Mendocino County from proceeding with the action filed there. On December 17th, the petition was denied without opinion by Division Three of this court (1 Civ. 21032).

### *The failure to continue the stay of the Mendocino County action*

The last action dictates that preliminary inquiry be directed to the question of whether the denial of the petition for a writ of prohibition is res judicata of the issues presented therein, and thereby precludes further consideration of the question which the Districts seek to have reviewed herein. The subject was recently reviewed by this court with the following

conclusion: "Accordingly the rule is well settled that a denial by the Supreme Court or the appellate court of an application for a writ without opinion is not res judicata of the legal issues presented by the application unless the *sole possible* ground of the denial was that the court acted on the merits, or unless it affirmatively appears that such denial was intended to be on the merits. (*Hagan* v. *Superior Court,* 57 Cal.2d 767, 770 [22 Cal.Rptr. 206, 371 P.2d 982]; *People* v. *Pipes,* 179 Cal.App.2d 547, 552 [3 Cal.Rptr. 814]; *Confidential, Inc.* v. *Superior Court,* 157 Cal.App.2d 75, 78 [320 P.2d 546]; *McDonough* v. *Garrison,* 68 Cal.App.2d 318, 325 [156 P.2d 983]; see *Funeral Directors Assn.* v. *Board of Funeral Directors, supra* [22 Cal.2d 104 [136 P.2d 785]], pp. 107-110.)" (*Oak Grove School Dist.* v. *City Title Ins. Co.* (1963) 217 Cal.App.2d 678, at p. 694 [32 Cal.Rptr. 288]. In addition to the cases cited see *People* v. *Bergholm* (1960) 181 Cal.App. 2d 778, 782 [5 Cal.Rptr. 608] and 3 Witkin, Cal. Procedure (1954) Extraordinary Writs, § 58, p. 2550; and cf. *Overstreet* v. *County of Butte* (1962) 57 Cal.2d 504, 506 [20 Cal.Rptr. 631, 370 P.2d 335]; and Witkin, *op. cit.,* § 67, p. 2562, when the proceedings are determined on the merits.)

Respondents seek to come within the *"sole possible* ground" emphasized in the foregoing quotation. Examination of the cases cited reflects no situation where the exception was applied. In *McDonough* v. *Garrison,* where the emphasized words first occur, the following appears: "At the threshold of this appeal we are met by the contention that, inasmuch as the precise jurisdictional points now urged for a reversal of the judgment were urged on the unsuccessful petitions for prohibition, and inasmuch as the only points briefed on those proceedings were the jurisdictional questions, the denials of such petitions must have been on the merits, and therefore such denials without opinion are res judicata, and constitute binding determinations that the trial court had jurisdiction to proceed as it did." (68 Cal.App.2d at pp. 324-325.) The majority opinion, which withstood a petition for hearing in the Supreme Court, rejected the view, expressed in the dissent, that the prior denial of a writ by the District Court of Appeal, and denials of rehearing of that ruling, and of an original application for a writ by the Supreme Court, were res judicata of the issue presented. It stated the rule as set forth in the above quotation and found two reasons why the petition might have been denied which are also pertinent here: first, "The various writs could have been denied because the courts

involved felt that, although there was an apparent excess of jurisdiction, an appeal from the final judgment was a plain, speedy and adequate remedy. It is elementary law that even though a trial court is acting in excess of its jurisdiction, an appellate court may, in its discretion, refuse to interfere by prohibition if the same questions may be passed on by an appeal after judgment, and if, in the opinion of the appellate court such remedy is plain, speedy and adequate'' (*id.*, at p. 328) ; and, secondly, ''The lower court had ordered a trial de novo before a jury. That order was not final. It was no more final than an order on a demurrer prior to entry of judgment is final. The trial court could have changed its order any time before trial. When the petitions for writs of prohibition were filed the appellate courts may have denied them because they felt that the trial court would correct its error and not enter a final order in excess of its jurisdiction. The possibility that this may have been the basis of the denials prohibits such denials from becoming res judicata on the merits'' (*id.*, at p. 329).

The Districts seek summary resolution of the issue on the ground that the trial court having made its first decision on the issue presented had no power to set it aside or amend it. (See *Maxwell* v. *Perkins* (1953) 116 Cal.App.2d 752, 755 [255 P.2d 10].) The case relied upon involved a motion for change of venue, which at the time was an appealable order. (Code Civ. Proc., § 963, subd. 2, prior to amendment by Stats. 1961, ch. 1059, § 2, p. 2748; *Harris* v. *Alcoholic Beverage etc. Appeals Board* (1961) 197 Cal.App.2d 759, 762 [18 Cal.Rptr. 151].) Moreover, if the order changed the place of trial, the court of necessity had divested itself of jurisdiction over the case.

In *De la Beckwith* v. *Superior Court* (1905) 146 Cal. 496 [80 P. 717], the court issued a writ of mandate compelling the trial court to consider a motion to vacate its order which had sustained the demurrers of certain defendants, and to bring the defendants before the court. In the course of its opinion the court stated : ''The ruling of the court upon the demurrers had not in any proper sense of the term become the law of the case. It is a most common occurrence for a trial court to change its rulings during the progress of a trial, upon questions of law, and no one would contend that it is not within its power to do so, or that it should not do so when satisfied that the former ruling was erroneous. A ruling on demurrer occupies no better position in this regard than any other ruling

from which an appeal could not be taken, and has frequently been disregarded when the same points subsequently arose in the same case in another way.'' (146 Cal. at p. 499; and see *Vertex Inv. Co.* v. *Schwabacher* (1943) 57 Cal.App.2d 406, 409-410 [134 P.2d 891]; *Tiffany Productions, Inc.* v. *Superior Court* (1933) 131 Cal.App. 729, 731-738 [22 P.2d 275]; and *City of Los Angeles* v. *Oliver* (1929) 102 Cal.App. 299, 325-326 [283 P. 298].) In *Vertex* it is recognized that such a determination ''may be changed for no other reason than that the judge is of the view that his first ruling was erroneous.'' (57 Cal.App.2d at p. 410.) The order regarding the stay was not appealable. (Code Civ. Proc., § 963; *Rhodes* v. *Craig* (1863) 21 Cal. 419, 423; *Pacific Engine etc. Works* v. *Superior Court* (1955) 132 Cal.App.2d 739, 745 [282 P.2d 937]; *San Joaquin etc. Assn.* v. *Herschel etc. Co.* (1955) 130 Cal.App.2d 119, 122-123 [278 P.2d 448]; and see *Bailey* v. *Fosca Oil Co., Ltd.* (1962) 211 Cal.App.2d 307, 308 [27 Cal. Rptr. 454]; but cf. Code Civ. Proc., § 597, and *Woodhouse* v. *Pacific Elec. Ry. Co.* (1952) 112 Cal.App.2d 22, 25 [245 P.2d 701].)

 Finally, it is noted that one of the alternatives on which the stay was expressly conditioned was ''until further order of the Court.'' This was a clear reservation of jurisdiction to take future action to dissolve the stay (see *Lord* v. *Superior Court* (1946) 27 Cal.2d 855, 856 and 858 [168 P.2d 14]). The Districts contend that it could only exercise that jurisdiction upon termination of the prior Los Angeles County action. However, the power to act was there, and the critical question is whether or not it was properly exercised.

 The Districts rely upon the general principle voiced in *Scott* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 76 [293 P.2d 18] as follows: ''General principles applicable to controversies in which the same parties and the same subject matter are involved are these: When two or more tribunals in this state have concurrent jurisdiction, the tribunal first assuming jurisdiction retains it to the exclusion of all other tribunals in which the action might have been initiated. Thereafter another tribunal, although it might originally have taken jurisdiction, may be restrained by prohibition if it attempts to proceed. [Citations.] One reason for the rule is to avoid unseemly conflict between courts that might arise if they were free to make contradictory decisions or awards at the same time or relating to the same controversy; another reason is to protect litigants from the expense and harassment of multiple litigation. [Cita-

tions.]'' (46 Cal.2d pp. 81 and 82. In addition to the cases collected and analyzed at p. 82, see *Cutting* v. *Bryan* (1929) 206 Cal. 254, 257 [274 P. 326]; *Morrisette* v. *Superior Court* (1965) 236 Cal.App.2d 597, 599-600 [46 Cal.Rptr. 153]; *Padula* v. *Superior Court* (1965) 235 Cal.App.2d 567, 571 [45 Cal.Rptr. 500]; *Mungia* v. *Superior Court* (1964) 225 Cal. App.2d 280, 283 [37 Cal.Rptr. 285]; *Figgs* v. *Superior Court* (1962) 204 Cal.App.2d 231, 233 [22 Cal.Rptr. 199]; *Robinson* v. *Superior Court* (1962) 203 Cal.App.2d 263, 267 [21 Cal. Rptr. 475]; *Cade* v. *Superior Court* (1961) 191 Cal.App.2d 554, 559 [12 Cal.Rptr. 847]; *Burch* v. *Slamin* (1955) 137 Cal.App.2d 1, 3 [289 P.2d 498]; and cf. *San Martin* v. *Superior Court* (1959) 169 Cal.App.2d 14, 16 and 17-18 [336 P.2d 618]. Further discussion is found at 1 Witkin, Cal. Procedure, Jurisdiction, §§ 193-206, pp. 459-474; Procedure Before Trial (Cont. Ed. Bar, 1957) pp. 147-157.) As noted in *Scott*, the situation is analogous to that where a plea in abatement is interposed by either demurrer or answer on the ground that a prior action is pending between the same parties for the same cause. (Code Civ. Proc., § 430, subd. 3 and § 597; and see *Colvig* v. *RKO General, Inc.* (1965) 232 Cal.App.2d 56, 70-74 [42 Cal.Rptr. 473].)

The crux of the controversy herein is the application of this rule as laid down in the respective cases of *Myers* v. *Superior Court* (1946) 75 Cal.App.2d 925 [172 P.2d 84], upon which the trial court relied in granting the original order for the stay of proceedings, and *Robinson* v. *Superior Court, supra,* 203 Cal.App.2d 263 which the trial court understood to require a contrary result. Before analyzing these opinions it is important to determine the respective parties and subject matter involved in the Los Angeles and Mendocino actions.

From the decision reported in 206 Cal.App.2d 398, it appears that the Los Angeles action was brought by the Districts as plaintiffs, and that Landier, the Company, Honor, Rose and Redwood were named as defendants. The amended complaint in the Los Angeles action which was brought to the attention of the Mendocino County court reflects that the foregoing and Stearns, and others allegedly claiming under Landier or the Company, were joined as defendants. The Mendocino action involves Redwood, Stearns and Rose as plaintiffs, and in addition to the Districts, one Burnette, who is named in the Los Angeles action as a defendant, served in the Mendocino action as a fictitious defendant.

The fact that Stearns was not named in the original com-

plaint would not prevent priority of jurisdiction attaching to the Los Angeles action, because he could always be, as he was, added as a party and would have the right to intervene by cross-complaint. (*Figgs* v. *Superior Court, supra,* 204 Cal.App. 2d 231, 233; *M. H. Golden etc. Co.* v. *Superior Court* (1950) 98 Cal.App.2d 811, 816 [221 P.2d 218]; *Myers* v. *Superior Court, supra,* 75 Cal.App.2d 925, 931; and see *Gorman* v. *Superior Court* (1937) 23 Cal.App.2d 173, 176-177 [72 P.2d 774].)

The subject of the Los Angeles action has been determined to be ''an action in the nature of a creditors bill to have various conveyances of certain real property set aside as having been made in fraud of creditors. . . . The complaint sounds in fraud and seeks to remove obstructions fraudulently thrown in the way of realizing upon executions issued in furtherance of a valid final judgment.'' (206 Cal.App.2d at pp. 400 and 402.) In the first count of their amended complaint in the Los Angeles action the Districts alleged fraud and collusion of Rose, Landier and the Company in connection with the judgment obtained by Rose on December 30, 1960 in Mendocino County Action No. 21860. In the seventh count they allege that Rose's conveyance to Redwood was to hinder, delay and defraud the creditors of Landier. In the ninth count they allege that Stearns acquired his interest with knowledge of the foregoing. The prayer includes requests that the judgment referred to be set aside, that the conveyances from Rose to Redwood and Stearns be set aside, and that the property be sold under the writ of execution issued in the original Los Angeles action.

The Mendocino County action is entitled ''Complaint to Quiet Title and For Declaratory Relief.'' It specifically alleges that the Districts claim an interest in the property by virtue of the abstract of judgment and writ of execution levied on the Mendocino property. It further alleges that plaintiffs claim under the judgment obtained in Mendocino County Action No. 21860, and ''That a controversy exists between plaintiffs and defendants concerning the legal effect of the two title chains above set forth, plaintiffs claiming that the title of Rose Landier Heiner is paramount and defendants claiming that their execution levy is paramount.'' The prayer is that plaintiffs' title be quieted against all claims of the defendants and that they have judgment declaring that their title is paramount over defendants. There can be no question but that both actions involve the validity and effect of the judgment in the earlier Mendocino County action between Rose and Landier

and the Company. Nor can it be questioned that a judgment on this question in either action would be res judicata in the other.

In *Myers* both actions involved a contract for the sale and purchase of certain real and personal property in Calaveras County. The first action served was that brought by the purchasers in Sacramento County "for the specific performance of a contract relating to such personal and real property . . . and for other relief of a personal character. . . ." The action subsequently filed in Calaveras County was by the vendor "to quiet title to personal as well as real property" (75 Cal.App.2d at p. 930). The court granted a peremptory writ of prohibition to restrain the Calaveras County court from proceeding with the trial of the quiet title action.

In *Cade* v. *Superior Court, supra,* 191 Cal.App.2d 554, *Myers* was analyzed as follows: "1. Where two tribunals have concurrent jurisdiction over the same parties and subject matter, the tribunal in which jurisdiction first attaches is entitled to retain it exclusively and prohibition lies to restrain the other tribunal from taking any further proceedings pending the complete exercise thereof.

"2. The fact that the action filed in Calaveras County was one to try title did not entitle that court to proceed with the action where the subject matter of the action was essentially transitory because personal property was involved.

"3. The fact that the parties to the two actions were not entirely identical does not preclude petitioners from prosecuting their action to completion because the Sacramento County Superior Court has jurisdiction to bring in all the necessary parties.

"4. It is also of little moment that the remedies sought by the two actions are not precisely the same. The Superior Court of Sacramento County has the power and duty to litigate all the issues and grant all the relief to which any of the parties may be entitled under the pleadings. The defendant in the Sacramento action may obtain the relief she seeks by filing her answer, denial or cross-complaint therein.

"5. If both actions are allowed to proceed, the petitioner will be subjected to two trials over one controversy. A mere statement of the situation is sufficient to demonstrate that the entire matter should be heard and determined in one court and indicates that the issuance of the writ is necessary to prevent an injustice. Under these circumstances, the place of trial is governed by Code of Civil Procedure, section 395, covering 'all

other cases.' (See also 1 Witkin, California Procedure (1954) 460-469, 707-715; 13 Cal.Jur.2d, §§ 92 to 96, 99 to 100, pp. 604-613, 619-625; 51 Cal.Jur.2d, § 14, p. 30.)'' (191 Cal.App.2d at pp. 558-559.)

In *Cade,* original jurisdiction was secured by the Los Angeles County Superior Court in an action brought by a property owner who alleged that the defendants who lived or did business in that county held usurious loans secured by encumbrances on his property in San Bernardino County. He sought appropriate relief including a restraint of threatened foreclosure. The beneficiaries under the deeds of trust who were defendants in the Los Angeles County action countered with an action in San Bernardino County to quiet title to their rights under the deeds of trust, for declaratory relief in regard to the property owner's claims, and for a declaration that they had the right to foreclose by sale. The court granted a writ of prohibition restraining proceedings in the latter action. No attempt was made to analyze the nature of the San Bernardino action as transitory or local, but the court contented itself with determining that the Los Angeles County action was a personal action and transitory in character; and that the parties and the notes and trust deeds involved in the two actions were the same. (191 Cal.App.2d at pp. 556 and 559.)

In *Robinson* the general doctrine upon which the Districts rely was qualified. The first action was one filed in Merced County for declaratory relief ''to determine the respective rights and obligations of the plaintiffs and numerous defendants arising out of written agreements for the drilling of two water wells on property of petitioners in Kings County.'' (203 Cal.App.2d at p. 265.) After being served with summons in that action, in which it was designated as a joint venturer with a signatory to one of the contracts involved, a materialman brought an action in Kings County to establish and enforce a materialman's lien (*id.*). The court concluded: ''[T]here appears to be a vital difference in the parties, the subject matter, and the remedies in the two cases, and the writ of prohibition should not issue.'' (*Id.* at p. 271.)

In *Robinson* the court recognizes the general rule which was applied in *Myers* and *Cade,* but applies the references in each case to the fact that the court found the action away from the situs of the land was transitory (*id.* pp. 269-270), to a requirement that both actions be transitory. The opinion recites: ''However, a basic requirement for invoking these rules is that the courts of the two counties shall have concurrent juris-

diction. And we find that Merced County and Kings County do not have concurrent jurisdiction of this entire controversy, for article VI, section 5, of the California Constitution provides that: '. . . all actions . . . for the enforcement of liens upon real estate, shall be commenced in the county in which the real estate, or any part thereof, affected by such action or actions, is situated.' This requirement is jurisdictional and cannot be waived. If a suit for the foreclosure of a mechanic's or materialman's lien is filed in a county other than that in which the land is located, the suit must be dismissed. [Citations.] Kings County is the only county in the state in which an action to foreclose the mechanic's lien could legally be commenced. If a suit solely for that purpose had been filed by Roscoe Moss Company in Merced County, the court would be wholly without jurisdiction; there could be no waiver by stipulation or otherwise of the constitutional requirement, and any judgment which might be rendered would be absolutely void. The same observation applies to the cross-complaint for the foreclosure of the lien; the Merced court could not foreclose the lien in Kings County." (*Id.* pp. 267-268.) This substitutes a test of concurrent jurisdiction to award the same remedy for concurrent jurisdiction over the subject matter. There is no reason why the properly filed lien action could not be stayed, as was the foreclosure in *Cade,* until the issues common to both actions were resolved.

In *Figgs* v. *Superior Court, supra,* 204 Cal.App.2d 231, the original Los Angeles County action was "for declaratory relief on a contract, and . . . a demand that title and possession of Tehama County land be restored to plaintiff." Plaintiff's vendor appeared in that action. Thereafter Figgs, a successor in interest to the foreclosing vendor, who had been named in an amended complaint in the Los Angeles action, but who had not yet been served therein commenced an action to quiet title in Tehama County. He then sought a writ prohibiting the further prosecution of the Los Angeles action as to him. The court denied the writ and concluded: "When actions are pending in two different superior courts involving the same parties and the same subject matter, priority attaches when a court first assumes jurisdiction through the service of process on a defendant. (*Cade* v. *Superior Court,* 191 Cal.App. 2d 554 [12 Cal.Rptr. 847]; *Gorman* v. *Superior Court,* 23 Cal.App.2d 173 [72 P.2d 774].) It here appears that the respondent Superior Court of Los Angeles acquired jurisdiction of the controversy not later than October 18, 1960,

through the service of process or through the voluntary appearance of the defendant, Okay Improvement Corporation, which is the equivalent of personal service. (Code Civ. Proc., § 416.) This was long before the commencement of the quiet title action in Tehama County. Figgs argues that the Los Angeles court did not obtain priority as to him in October 1960 because he did not become a party to the Los Angeles action until April 1961. However, priority is based upon jurisdiction over the controversy, not merely jurisdiction over the individual who has been served. In both the *Cade* and *Gorman* cases it appears that priority attached when summons was first served on one defendant, even though other defendants had not been served. Furthermore, as the court pointed out in the *Gorman* case, the court 'acquired jurisdiction over the whole litigation with full power to bring in all necessary parties and make a complete adjudication of the entire controversy through the fact that process of that court was first served.' (23 Cal.App.2d at p. 177.) The purpose of the rule is to avoid the duplication and confusion of multiple actions. If, as Figgs contends, priority did not apply to the whole controversy, and new priorities could be acquired party by party, the result would be chaos.'' (204 Cal.App.2d at p. 233.) Unfortunately there is no mention of *Robinson, supra,* or of the effect of section 5 of article VI of the California Constitution. It appears clear, however, that the result cannot be reconciled with the language of *Robinson* which requires that each court have power to grant the same relief, or with the holding of the trial court in this case.

The true test is whether or not the determination in the first suit would be res judicata in the second suit. (See *Lord* v. *Garland* (1946) 27 Cal.2d 840, 848 [168 P.2d 5] ; *San Martin* v. *Superior Court, supra,* 169 Cal.App.2d 14, 16.) In *Myers* the court stated : ''Likewise of little moment is the circumstance that the remedies sought by the two actions are not precisely the same. [Citations.] The significant fact is that the Superior Court of Sacramento County has the power and is charged with the duty of litigating all the issues and giving all the relief to which any of the parties may be entitled under the pleadings. [Citation.] And as far as identity of issues is concerned, it is apparent that what the plaintiff in the Calaveras action seeks is a declaration that the defendants therein, petitioners herein, have no right, title, or interest in the property involved, and that in order to quiet title against them it would be necessary for the court to determine that

they have no rights as purchasers under the contract of sale, which rights are the very subject of the action in Sacramento County." (75 Cal.App.2d at p. 931.) So here the plaintiffs in the instant Mendocino County case sought a declaration that the Districts had no right, title or interest in the property involved, and in order to quiet title against the Districts it was necessary for the Mendocino court to determine that they had no rights under the abstract of judgment or levy of execution because the judgment in action No. 21860 was not only valid and binding as to the parties thereto, but also in respect of the Districts as creditors of Landier and the Company, which rights were the very subject of the Los Angeles action.

"It is of little moment that the remedies sought by the two actions are not precisely the same. The significant fact is that the superior court in the Tulare action has the power and is charged with the duty of litigating all the issues and giving all the relief to which either party may be entitled under the pleadings. (*Myers* v. *Superior Court,* 75 Cal.App.2d 925, 931 [172 P.2d 84].)" (*Padula* v. *Superior Court, supra,* 235 Cal.App.2d 567 at p. 571.) The cases involving actions growing out of the marital relationship recognize that an action for divorce and an action for separate maintenance involve the same subject matter within the general rule under discussion. (*Mungia* v. *Superior Court, supra,* 225 Cal.App.2d 280, 283; *Rilcoff* v. *Superior Court* (1942) 50 Cal.App.2d 503, 506 [123 P.2d 540]; and cf. *San Martin* v. *Superior Court, supra,* 169 Cal.App.2d 14, 17.) Similar considerations apply in a conflict between a child custody award in a divorce proceeding and an action for the appointment of a guardian for the same child. (*Greene* v. *Superior Court* (1951) 37 Cal.2d 307, 312 [231 P.2d 821].) More to the point are the cases where the first action seeks to affect the creditors' right in land which lies in another county (*Figgs* v. *Superior Court, supra,* 204 Cal.App. 2d 231, 232; *Cade* v. *Superior Court, supra,* 191 Cal.App.2d 554, 559; *Myers* v. *Superior Court, supra,* 75 Cal.App.2d 925, 929) particularly in view of the fact that liens must be enforced in the county where the land lies. (Cal. Const., art. VI, § 5; and see *Hartwick* v. *Superior Court* (1959) 174 Cal. App.2d 809, 811 [345 P.2d 304].)

The propriety of giving priority to the action in which the Los Angeles Superior Court first obtained jurisdiction over the parties and the subject matter is, of course, dependent upon the validity of the exercise of that jurisdiction. It has been

determined by the application of established principles that the provisions of section 5 of article VI of the state Constitution did not preclude the Los Angeles County court from assuming jurisdiction of the action to set aside the conveyances.[3] (*Los Angeles City School Dist.* v. *Redwood Empire Title Co., supra,* 206 Cal.App.2d 398, 402-403; and see *Woodbury* v. *Nevada etc. R. Co.* (1898) 120 Cal. 463, 465-466 [52 P. 730]; *Beach* v. *Hodgdon* (1884) 66 Cal. 187, 188 [5 P. 77]; *Heffernan* v. *Bennett & Armour* (1944) 63 Cal.App.2d 178, 182-183 [146 P.2d 482]; *Alpha H. & S. Co.* v. *Ruby Mines Co.* (1929) 97 Cal.App. 508, 512 [275 P. 984]; but cf. *Rice* v. *Schubert* (1951) 101 Cal.App.2d 638, 642 [226 P.2d 50]; and see 1 Chadbourn, Grossman, Van Alstyne, California Pleading (1961) § 266, pp. 182-184; and 1 Witkin, *op. cit.,* Actions, §§ 192-194 and 214, par. (c), pp. 707-710 and 728; Procedure Before Trial (Cont. Ed. Bar, 1957) p. 172.) The appellate decision in the Los Angeles County case also upheld the right of that court to proceed despite the provisions of section 392 of the Code of Civil Procedure which govern actions involving real property. (206 Cal.App.2d at pp. 403-405; cf. *Rice* v. *Schubert, supra,* 101 Cal.App.2d 638, 640-642; and see *Mungia* v. *Superior Court, supra,* 225 Cal.App.2d 280, 285; *Cade* v. *Superior Court, supra,* 191 Cal.App.2d 554, 559; and *M. H. Golden etc. Co.* v. *Superior Court, supra,* 98 Cal.App.2d 811, 816 in which the question of venue was left open; and 1 Witkin, *op. cit.,* Actions, §§ 195-196 and § 214, par. (c) pp. 710-712 and 728; Procedure Before Trial, *op. cit.,* pp. 173-174.) This portion of that decision has been criticized. (See Chadbourn et al. *op cit.* (1966 Supp.) §§ 266 and 283, pp. 31 and 33.) Nevertheless it remains the law of the case insofar as the Los Angeles County action is concerned and binds any party herein who appeared before that court in person, or by representation of his interest by another.

It is concluded therefore that the Los Angeles County Superior Court properly first acquired jurisdiction over the subject matter of the validity of the proceedings whereby Landier and the Company were divested of any interest in the Mendocino ranch and over the parties who were concerned therewith. The Mendocino court erred in vacating its order which had stayed the proceeding in that county pending the

---

[3]The decision in the Los Angeles case clearly binds Rose and Redwood who were parties thereto. Since Stearns derived title from Rose, and since Redwood holds title of record for him, he too is bound by those proceedings although he was only made a party to that action subsequently.

determination of the Los Angeles action. (See *Figgs* v. *Superior Court, supra,* 204 Cal.App.2d 231, 233 and the companion case of *Ponderosa Sky Ranch* v. *Okay Improv. Corp.* (1962) 204 Cal.App.2d 227, 231 [22 Cal.Rptr. 90].)

██ Is it too late to lock the stable now that the horse has been stolen? Where a trial court fails to stay an action so that arbitration may proceed, a judgment on the merits will be reversed. (*Tas-T-Nut Co.* v. *Continental Nut Co.* (1954) 125 Cal.App.2d 351, 358-359 [270 P.2d 43]; and see *San Joaquin etc. Assn.* v. *Herschel etc. Co., supra,* 130 Cal.App.2d 119, 122-123.) Similarly the failure to entertain a plea in abatement has led to reversal although a judgment has been rendered on the merits. (*Baker* v. *Eilers Music Co.* (1917) 175 Cal. 657, 658-659 [166 P. 1008]; *Conrad* v. *West* (1950) 98 Cal.App.2d 116, 118-119 [219 P.2d 477]; and see *Collins* v. *Ramish* (1920) 182 Cal. 360, 366-369 [188 P. 550].)

The court in *Collins* v. *Ramish, supra,* notes: "[W]e would not be warranted in giving a direction for dismissal or abatement of the action where it is clearly made to appear that the effect thereof would be to accomplish injustice." (182 Cal. at p. 367.) It refused to order a dismissal or abatement but remanded the case because it appeared that the prior action, pending an appeal, would be dismissed.

In *Bank of America etc. Assn* v. *Cohen* (1937) 21 Cal.App. 2d 510 [69 P.2d 875], the court found that the defendant waived the plea in abatement by refusing to join in a dismissal of the prior action in which he had asserted a consolidation. The court observed: "The defendants in this action do not contend at any place in the briefs that there has been a miscarriage of justice or that prejudice resulted to them from the ruling. If the court had sustained the plea in abatement it would have resulted merely in the continuance of the case, sending the witnesses home to come back again, expense and delay. The defendants do not point out to us anything so sacred about the filing-stamp on the back of a complaint that it would justify a reversal in this court after a trial on the merits in the superior court. The date mark is not a substantial difference and judgment on either complaint if once obtained will suffice. An appellant is entitled to assign for error only such proceedings in the trial court as injuriously affect him." (21 Cal.App.2d at pp. 512-513.) That case may well be limited to its facts which reflect that the cases were pending before the same court and that the objecting party not only refused to join in a dismissal of the prior action, but

also refused to stipulate to a consolidation. It does, however, prompt inquiry to determine whether any purpose would be served by reversing the judgment entered in this case and remanding the case so that the litigation can proceed in an orderly manner with priority in the Los Angeles County action. If there are no errors in this record, and the evidence compels the result which has been obtained, such a reversal would appear frivolous. (See state Constitution, art. VI, § 4½; *Fidelity & Deposit Co. v. Claude Fisher Co.* (1958) 161 Cal.App.2d 431, 435 [327 P.2d 78]; and *Forrest* v. *Fink* (1925) 71 Cal.App. 34, 38-39 [234 P. 860].) Attention is therefore directed to the errors alleged by the Districts and the sufficiency of the evidence.

### The demurrer to the cross-complaint

In their original cross-complaint, which was filed in this action after the trial court had vacated the order which had stayed proceedings and had overruled their demurrer to the plaintiffs' complaint, the Districts sought to recover money damages for alleged fraud. A first cause of action alleged that Rose, Landier and the Company fraudulently entered into an agreement in the latter months of 1957 and January 1958 for the purpose of insulating the ranch from the claims of the Districts, and that the purpose of said agreement was further effectuated by the judgment secured by Rose against Landier and her subsequent conveyance to Redwood. In a second cause of action attack was made on the theory that Honor, Stearns and Landier had conspired to defeat the Districts' claims by calling off the original foreclosure which one Champlin had started on Honor's claim, and by the subsequent transfer of the deed of trust to a nominee of Stearns. In a third cause of action the Districts attacked the transaction whereby Landier's appeal from the judgment in favor of Rose was dismissed and Stearns ended up as the holder of a one-half interest in the property.

Landier, the Company, and Honor filed a joint answer to the cross-complaint. Stearns and Redwood jointly and Rose each filed a demurrer to this cross-complaint, which demurrers were sustained by the court.

The Districts allege error, and claim prejudice because if they were entitled to secure money damages for fraud, they were entitled to a jury trial, whereas, if they are reduced to a claim of an equitable interest in the property, there was no right to a jury.

The pleadings reflected that record title was in Redwood for

the benefit of Rose and Stearns. Under these circumstances, Redwood, Rose and Stearns being the alleged transferees receiving the property in fraud of creditors, the court properly held that the creditor was relegated to his rights against the property and could not recover money damages from those who still held the property. (*Kuzmicki* v. *Nelson* (1950) 101 Cal.App.2d 278, 280 [225 P.2d 233] ; *Hy-Lo Unit & Metal Products Co.* v. *Ryon* (1937) 21 Cal.App.2d 38, 43 [68 P.2d 393] ; and cf. *Aggregates Assoc. Inc.* v. *Packwood* (1962) 58 Cal.2d 580, 591 [25 Cal.Rptr. 545, 375 P.2d 425] ; *Swinford* v. *Rogers* (1863) 23 Cal. 233, 236 ; and *Pedro* v. *Soares* (1937) 18 Cal.App.2d 600, 604-605 [64 P.2d 776].)

The Districts seek to avoid the effect of the foregoing authorities, which govern the situation where a transfer in fraud of creditors is concerned, by reference to the principle that a defrauded person may elect to seek return of his property or sue for damages (see 23 Cal.Jur.2d, Fraud and Deceit, §§ 51 and 55, pp. 128-129 and 137). The only fraud and deceit alleged is that of Landier in representing his net worth to the Districts for the purpose of securing an extension of time for the payment of the October 1957 installment, when he, allegedly, at the same time was taking steps to divest himself of his principal asset. The remaining parties were free to receive such property as Landier or others might convey to them, and to take such action as they might be advised to protect their own interests, subject, however, to the creditors' right to show in equity that a conveyance was in fact in fraud of creditors, or that property was in fact held for the benefit of the debtors or either of them.

### The sufficiency of plaintiffs' case

By demurrer, which was overruled, and by subsequent motion for nonsuit the Districts attacked the sufficiency of the case alleged and proved by plaintiffs. These facts were : the judgment which Rose had obtained against Landier and the Company, a stipulation that the property had been conveyed to Redwood by Rose to be held for the benefit of Rose and Stearns, and the abstract of judgment and execution which ran against any interest of Landier and the Company in the property.

 It is the Districts' contention that the recording of the instruments against the interests of Landier and the Company cannot possibly be considered a cloud on the interests of plaintiffs because they are not in plaintiffs' chain of title. The strategy behind this contention was to force plaintiffs to allege

that the cloud on their title was the pending Los Angeles Superior Court action, which assumedly would thereby strengthen the contention that since the subject matter of the two actions was the same, the Mendocino action should be stayed. Conversely, if plaintiffs were dismissed or nonsuited in Mendocino County, the Los Angeles action would stand alone.

The question is discussed and resolved adversely to the Districts in *Miller* v. *Price* (1930) 103 Cal.App. 650 [284 P. 1035], wherein it is stated: ''In this behalf it is argued that an execution issued in an action in which the plaintiff was not a party, and the levying thereof upon the lands claimed by him, fail to cast a cloud upon the title of the plaintiff, as it would appear from the record that the plaintiff, not being named as a party, the proceeding is void upon its face, and therefore an action in equity to remove the cloud would not lie. This contention of the respondents appears to be well taken, as appeared in the case of *Russ & Sons Co.* v. *Crichton,* 117 Cal. 695 [49 P. 1043], and the cases there cited. This, however, does not relieve the respondents from liability if they are otherwise sufficiently charged in the plaintiff's complaint. While the weight of authority is in support of the contention that equity will not interfere to remove a cloud upon title to real estate where the invalidity of the instrument said to cast such cloud appears upon the face thereof, this apparent defect in affording a land owner a remedy has been obviated by section 738 of the Code of Civil Procedure relative to adverse claims. In *Castro* v. *Barry,* 79 Cal. 443 [21 P. 946], the Supreme Court had before it the question of when an action would lie to determine an adverse claim, rather than by a proceeding in equity to remove a cloud. It is there said, quoting section 738: 'An action may be brought by any person against another who claims an estate or interest in property, adverse to him, for the purpose of determining such adverse claim. The distinction between the two kinds of action is clear. They are different not merely in form, but in purpose. In the former case the proceeding is aimed at a particular instrument, or piece of evidence, which is dangerous to the plaintiff's rights, and which may be ordered to be destroyed in whosesoever hands it may happen to be. While in the latter, the proceeding is for the purpose of stopping the mouth of a person who has asserted or is asserting a claim to the plaintiff's property, whether such claim be founded upon evidence or utterly baseless. It is not aimed at a particular piece of evidence, but at the pretensions of an individual. . . . The statute enlarges the class of cases in which equitable relief could formerly be

sought in the quieting of title.' . . . From which it follows that the levying of an execution upon the property of one person, under the claim that it belongs to a third person, would entitle the plaintiff to begin an action immediately to determine such adverse claim, . . .'' (103 Cal.App. at pp. 653-654; and see *Birch Ranch & Oil Co.* v. *Campbell* (1941) 43 Cal.App.2d 624, 628 [111 P.2d 445]; and *Dorris* v. *McManus* (1906) 3 Cal.App. 576, 581-582 [86 P. 909].)

### *Rulings admitting evidence*

The complaint alleges: ''Plaintiffs herein claim to own said property as a result of the judgment in favor of . . . Rose . . . against . . . Landier and . . . Company . . . in action . . . No. 21860. . . .'' The Districts generally denied the allegations of the complaint. In their amended cross-complaint, the allegations of which were incorporated by reference in their answer, they stated that action No. 21860 was filed simultaneously with an action for divorce, that Rose recovered judgment therein, and that her assertion of ownership was predicated upon a prior unexecuted agreement and was in fraud of creditors. Issue was joined as to whether or not the title acquired by the judgment in action No. 21860 could be set aside to protect the interest of creditors, and was so recognized in the pretrial proceedings.

At the trial, in the course of the cross-examination of the attorney who had represented Landier in the divorce, quiet title, and assault and battery actions, the attorney for Rose had him identify copies of the clerk's and reporter's transcripts in the quiet title action, a copy of the clerk's file in the divorce action, and a copy of the clerk's transcript in the assault and battery action. The first were offered to prove the scope of the issues litigaged and also to prove the contested nature of the earlier quiet title proceedings. The latter were offered to show the adversary and hostile nature of the simultaneous litigation between the parties. These documents were received in evidence over the Districts' objections.

The Districts never contended that the trial leading to the judgment in action No. 21860 was collusive and conceded that it was an adversary proceeding which was bitterly contested. The fraud complained of was Rose's use of the prior negotiations, which allegedly were designed to free the debtors' property from the Districts' claim, to her own advantage, and the subsequent conduct, which also involved Stearns, whereby the appeal was dismissed.

The errors complained of are that the trial court relied upon

the findings in the earlier action in arriving at findings adverse to the Districts in this action, and that the trial court had before it the testimony of witnesses whom the Districts never had a chance to examine.

■ The evidence consisting of the clerk's and reporter's transcripts of the prior quiet title action were material and competent to show the issues raised and the scope of the prior action. (See *Hall* v. *Coyle* (1952) 38 Cal.2d 543, 545-546 [241 P.2d 236]; *Olwell* v. *Hopkins* (1946) 28 Cal.2d 147, 151 [168 P.2d 972]; *United Bank & Trust Co.* v. *Hunt* (1934) 1 Cal.2d 340, 346-347 [34 P.2d 1001]; *Steiner* v. *Thomas* (1949) 94 Cal.App.2d 655, 658 [211 P.2d 321]; *City of Los Angeles* v. *Moore* (1916) 31 Cal.App. 39, 41 [159 P. 872]; and *Page* v. *Garver* (1907) 5 Cal.App. 383, 386 [90 P. 481].) Although the foregoing cases deal with the question of determining whether the prior action was *res judicata* between the parties or their successors in interest—a subject hereinafter reviewed—the materiality was established here by the issue which was raised by the Districts as to whether or not the prior judgment was predicated upon alleged agreement expressly designed to defraud creditors. Moreover, despite the stipulation, evidence concerning those proceedings, and as well as the divorce and tort actions, was material and competent on the issue of good faith and to show that the judgment was not collusive. (Cf. *Hy-Lo Unit & Metal Products Co.* v. *Ryon, supra,* 21 Cal.App.2d 38; *Pedro* v. *Soares, supra,* 18 Cal.App.2d 600; and *Hopkins* v. *White* (1912) 20 Cal.App. 234 [128 P. 780], on rehearing pp. 248, 249, where it is recognized that the acquisition of title by the transferee through judicial proceedings does not prevent setting aside the transfer at the instance of a creditor.)

Plaintiff Rose further contends that the admissions of Landier would be admissible against the Districts. (See Code Civ. Proc., § 1849; Evid. Code, § 1225; *Altvater* v. *Breckenridge* (1959) 174 Cal.App.2d 790, 797 [345 P.2d 358]; and Witkin, Cal. Evidence (1958) § 234, p. 265.) Any testimony of Landier in the prior action was given not only at a time subsequent to the alleged agreement to convey to Rose, but also after the Districts had filed an abstract of their judgment. Declarations made at that time may be of questionable competency. (See Evid. Code, § 1225, Comment.) The evidence of other witnesses either as to the declarations or statements of Landier, or as to another matter, could not bind the Districts in this action. They have failed, however, to point out in what particulars such evidence differed from that in this action, and in the absence of such specification no prejudice will be assumed.

Although no prejudicial error is found in the admission of the foregoing evidence, the probative effect given to it by the court is also questioned, and is hereinafter reviewed.

### Rulings excluding evidence

The Districts complain generally that the trial court unduly restricted their examination of Landier's former attorney by asserting a privilege on behalf of Landier who although a cross-defendant was not present at the trial in person or by an attorney.

"An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment; . . ." (Code Civ. Proc., § 1881, subd. 2; and see Evid. Code, § 954.) Generally the lawyer should claim the privilege on behalf of his client unless he has been otherwise instructed (see Evid. Code, §§ 954, subd. (c) and 955 and Comment; and Bus. & Prof. Code, § 6068, subd. (e)). Where the attorney fails to assert the privilege when he should, the judge may exclude information that is subject to a claim of privilege on his own motion (see Evid. Code, § 916 and Comment).

On the other hand, a privilege may be waived by failure to assert it (*Lissak* v. *Crocker Estate Co.* (1897) 119 Cal. 442, 445-446 [51 P. 688]; and see Evid. Code, § 912, subd. (a) and Comment). Moreover, where the client has testified to the substance of the conversations in the same or another action the attorney may be examined on the subject. (*Agnew* v. *Superior Court* (1958) 156 Cal.App.2d 838, 840-841 [320 P.2d 158].) Finally, it is noted that no privilege can be asserted where the client seeks advice which will serve him in the commission of a fraud. (*Agnew* v. *Superior Court, supra,* 156 Cal.App.2d 838, 840 and authorities cited; see Evid. Code, § 956 and Comment; but cf. *Nowell* v. *Superior Court* (1963) 223 Cal.App.2d 652, 657-658 [36 Cal.Rptr. 21].)

It is unnecessary to determine whether the privilege was waived by the failure of cross-defendant Landier to appear and claim it, whether it was waived by his testimony in either the current or the prior action, or whether an alleged conveyance in fraud of creditors is a fraud within the exception noted above. The Districts have failed, except in two instances, to show by offer of proof or otherwise what evidence might have been elicited which was not in fact produced from the lengthy examination and cross-examination of the former attorney.

The two instances consist of documentary evidence which was marked for identification only. Although they were not brought up with the record on appeal, the reporter's transcript reflects that the first was a telegram from Landier advising the attorney that he and Stearns were coming to Ukiah to confer with the attorney about the ranch. The second was a letter written by Landier to the attorney after arrangements were made to dismiss the appeal in which he advised the attorney it would be unnecessary for him to ascertain the details of the arrangement between Stearns and Rose as Landier had previously requested him to do. Both were excluded as privileged communications.

The substance of these communications was elicited from the attorney. In fact a copy of a letter allegedly prepared by Landier for transmission to the attorney was introduced by Stearns. Although it was not shown to have been mailed or received it tallies generally with the description of the rejected epistle.

Under these circumstances there has been no showing of prejudice by the rulings of the trial court. ''It is contended that error was committed in excusing the witness Kempt, an attorney at law, from testifying upon the ground that the matters sought to be elicited were privileged as being confidential communications from a client. We agree with appellant that the protection of privilege should not have been granted as to the particular testimony involved, because it appears that the communication to the attorney in this instance was not intended to be confidential and therefore could not be withheld upon the ground of privilege. (*Sharon* v. *Sharon*, 79 Cal. 633 [22 P. 26, 131].) But even if erroneous, the ruling was harmless, because the same matters were otherwise elicited. It is apparent that appellant suffered no prejudice and that the rulings complained of resulted in no miscarriage of justice.'' (*Berkowitz* v. *Tyderko, Ltd.* (1936) 13 Cal.App.2d 561, 564-565 [57 P.2d 173] ; accord: *People* v. *Drake* (1957) 151 Cal.App.2d 28, 44 [310 P.2d 997] ; *Costa* v. *Regents of University of California* (1953) 116 Cal.App.2d 445, 462 [254 P.2d 85] ; *Pecarovich* v. *Becker* (1952) 113 Cal. App.2d 309, 314 [248 P.2d 123] ; *Lopez* v. *Wisler* (1943) 58 Cal.App.2d 455, 463 [136 P.2d 816].)

*Failure to submit the case against Rose to the jury*

The first cause of action in the amended cross-complaint put in issue the validity of the negotiations between Rose and Landier prior to their separation and the effect of the subse-

quent judgment. By the pretrial order it was determined that the issues of fraud would be submitted to a jury for an advisory verdict. The Districts submitted four questions for determination on this phase of the case.[4] These interrogatories, and others tentatively proposed by the court and counsel for Stearns, were discussed at length. Before oral argument the court concluded as follows: "It is the opinion of the Court that if the first cause of action merely involved the question of alleged fraud between Rose Landier and Felicien Landier, that a nonsuit would have been granted. And for that reason I do not propose to submit any interrogatories on that subject. The only issue as far as the first cause of action deals with the question of transactions or transfer in fraud of creditors; that no interrogatories have been proposed which seem to the Court to present pertinent factual matters to the Jury on that issue. And, therefore, no interrogatories will be submitted to the Jury on that issue. And the only interrogatory which will be submitted is the interrogatory labelled Number 5, on the proposed interrogatories submitted by Mr. Lamoreaux, on behalf of the cross-complainants."

The following principle precludes review of the action of which the Districts complain: "The court made no error in denying the application of the defendants for a trial by jury. A proceeding or action instituted for the purpose of foreclosing a mortgage, either on real or personal property, involves an equitable remedy, and it is about as elementary a proposition as is to be found in the whole body of the law that juries are allowable in the equity courts, if at all, only as a matter of grace and not of right. Where a jury is invoked and is allowed in an equity case, it is merely because the chancellor desires its assistance in the solution of the questions of fact at issue, but the function or office of the jury in such a case is in nature and scope advisory only, and the jury's conclusion or

---

[4]These questions were: "I. Did Felicien P. Landier and Rose Landier Heiner conspire to defraud the School Districts? II. Did Felicien P. Landier place his trust and confidence in Rose Landier Heiner when he directed his lawyer, Mr. Cook, to draft the agreement in evidence and labeled Defendants' Exhibit Number _____? III. Was the actual consideration passing from Rose Landier Heiner to Felicien P. Landier in return for his agreement to transfer title to the ranch to her, so disproportionate to the value of the ranch that she, Rose, gained an unfair advantage over him in the transaction? IV. When Rose Landier Heiner filed her action against Mr. Landier and Landier Investment Company to obtain title to the ranch, which was action Number 21860 in the Superior Court of Mendocino County, and in the proceedings thereafter in said action, did she violate any trust and confidence previously placed in her by Felicien P. Landier?"

verdict upon the facts may be disregarded, even arbitrarily, by the chancellor, and findings of fact may be made by him contradictory to those implied from the verdict, and if there be testimony supporting the findings by the judge, the decree will stand immune from disturbance, so far as the findings are concerned. [Citations.]'' (*J. I. Case Threshing Machine Co.* v. *Copren Bros.* (1919) 45 Cal.App. 159, 167-168 [187 P. 772]; and see *Woolsey* v. *Woolsey* (1932) 121 Cal.App. 576, 581 [9 P.2d 605]; and 48 Cal.Jur.2d, Trial, § 162, pp. 262-263.)

*Sufficiency of the evidence in regard to Rose's
acquisition of title*

The failure to submit the proposed interrogatories to the jury does, however, highlight the fact that the trial court failed to consider the issues posed by the Districts' questions because it considered that the earlier judgment in the action brought by Rose against Landier was res judicata, and not subject to attack by a creditor. This theory was advanced by cross-defendants at the close of the Districts' opening statement, again at the conclusion of the Districts' case, and subsequently in the discussion of the interrogatories. It was adopted by the court in its memorandum opinion, and incorporated into the findings as follows: ''The judgment entered in said quiet title action was entered after each issue involved in said action had been fully litigated and was the product of hostile, arms-length and adverse litigation between Rose on the one hand and Landier and Company on the other hand. It was not the product, in any degree, of fraud, collusion or conspiracy between such parties, nor was such judgment obtained by Rose with the connivance, collusion or consent of Landier or Company, nor was such judgment obtained by Rose with intent to delay, hinder or defraud Districts or any other creditor of Landier or Company. The quiet title judgment entered against Landier and Company was not suffered by them to be taken against them with their intent to defraud their creditors, nor was it taken by the plaintiff Rose, with her intent to defraud their creditors. Each of the issues necessarily litigated in said quiet title action was fully litigated on an adversary basis in said action. One of the issues so litigated and decided by the court in which said action was pending was the issue whether the agreement of Landier and Company to convey the real property involved in said litigation to Rose was supported by a fair and adquate [*sic*] consideration. The judgment of said court resolves said issue in favor of the plaintiff therein, Rose E. Landier, and said judg-

ment has become final. The Districts are estopped to deny that said agreement was supported by a fair and adequate consideration and this court is precluded from any inquiry into said issue.''

The issues raised in determining whether a conveyance may be set aside at the behest of a creditor were reviewed by this court in *T W M Homes, Inc.* v. *Atherwood Realty & Inv. Co.* (1963) 214 Cal.App.2d 826 [29 Cal.Rptr. 887]. Therein it is recited: ''In order to establish a conveyance as fraudulent under section 3439.04 of the Civil Code, it must appear that the transferor is insolvent at the time of the conveyance or will be rendered insolvent thereby *and* that the conveyance was made without a fair consideration. [Citations.] Proof of insolvency and of want of fair consideration is therefore conclusive of fraudulent intent and *actual* intent to defraud on the part of the transferor is immaterial and need not be established. [Citations.] However, if the consideration is fair, the conveyance cannot be set aside under section 3439.04. [Citation.]'' (214 Cal.App.2d at pp. 842-843.) The opinion further states: ''On the other hand to establish a conveyance as fraudulent under section 3439.07 [fn. omitted] *actual* intent, as distinguished from intent *presumed* in law, to defraud creditors must be proved. 'While it is true that proof of fraud may, and must often be, made by circumstantial evidence [citation], it remains true that actual fraud must be proved by clear and convincing evidence [citation], and that ''where the circumstances of the transfer comport equally with the theory of honesty and fair dealing, fraud will not be found.'' (*Hedden* v. *Waldeck*, 9 Cal.2d 631, 636 [72 P.2d 114].)' (*Aggregates Assoc., Inc.* v. *Packwood, supra,* 58 Cal.2d 580, 588.) In such cases, however, the solvency of the transferor is immaterial *Fross* v. *Wotton* (1935) 3 Cal.2d 384, 389 [44 P.2d 350] quoting from *Hager* v. *Shindler* (1865) 29 Cal. 47, 59 to the effect that 'A rich man may make a fraudulent deed as well as one who is insolvent.') By its express terms the above statute provides protection for 'both present and future creditors.' '' (Pp. 843-844.)

An examination of the proceedings in the prior action of *Landier* v. *Landier* (No. 21860) reflects that Rose in her amended complaint relied upon an alleged agreement whereby Landier agreed to convey the ranch to her subject to Honor's lien for $56,000 in consideration of her raising $29,500 to be used by Landier and the Company to meet their obligations on a bank loan. The defendants answered by alleging that Lan-

dier promised to give a second lien on the ranch for the amount advanced, and that a vast discrepancy existed between the value of the ranch and the amount advanced to Landier by Rose. The trial court in that action concluded that any discrepancy between the consideration furnished by Rose and the value of the ranch was immaterial because the acceptance of the consideration by Landier was a waiver by him and the Company of any claim of inadequacy. The court found: "That the aforesaid agreement was fair, just and equitable and plaintiff has performed all obligations on her part required by the aforesaid agreement." The only mention of any rights of the Districts or other creditors in the property is a finding which notes that since the commencement of the action an abstract of judgment had been recorded against the property for a sum in excess of $300,000.

A *lis pendens* having been recorded prior to the abstract, the latter could not directly reach the interest of which Landier and the Company were deprived by the judgment in Rose's suit. (See *Hi-Valley Dev. Corp.* v. *Walters* (1963) 223 Cal.App.2d 778, 783 [36 Cal.Rptr. 140]; *Milton E. Giles & Co.* v. *Bank of America* (1941) 47 Cal.App.2d 315, 324 [117 P.2d 943]; *Koch* v. *Wilcoxon* (1916) 30 Cal.App. 517, 522 [158 P. 1048].) The error lies in assuming that the judgment, to which the creditor was not a party, gave Rose greater security against the claims of creditors than she would have enjoyed if Landier and the Company had in fact conveyed to her pursuant to the agreement which she alleged and proved in her action. While it is true that equity will not give specific performance of an executory agreement to defraud creditors (*Severance* v. *Knight-Counihan Co.* (1947) 29 Cal.2d 561, 568 [177 P.2d 4, 172 A.L.R. 1104]) no such issue was presented or resolved in the earlier suit. A transfer may be valid between the parties and yet be set aside at the suit of a creditor. (*McGee* v. *Allen* (1936) 7 Cal.2d 468, 476 [60 P.2d 1026]; *Patterson* v. *Missler* (1965) 238 Cal.App.2d 759, 770 [48 Cal. Rptr. 215].) So here the Districts were entitled to an independent adjudication on the issues of whether the January 1958 agreement to convey, which was merged in the judgment in the earlier action, rendered the debtors insolvent and was made without fair consideration from the standpoint of the creditor (see Civ. Code, §§ 3439.04 and 3439.01-3439.03; *Patterson* v. *Missler, supra,* 238 Cal.App.2d 759, 765-769; and *Bailey* v. *Leeper* (1956) 142 Cal.App.2d 460, 462-464 and 466 [298 P.2d 684]), and whether the parties at that time had an actual intent to defraud creditors of Landier and the Com-

pany. (See Civ. Code, § 3439.07; *Rossen* v. *Villanueva* (1917) 175 Cal. 632, 636 [166 P. 1004]; *Cioli* v. *Kenourgios* (1922) 59 Cal.App. 690, 697 [211 P. 838].)

It is argued that the creditors can only go behind the judgment where it is collusive or fraudulent itself. (See *Anderson* v. *Bank of Lassen County* (1903) 140 Cal. 695, 698 [74 P. 287].) This would be true if the judgment itself were the sole source of the transferee's title. On the other hand, where as here there is a conveyance or agreement to convey which may or may not be in fraud of creditors, the proof and establishment of that conveyance in later proceedings should not bind a third-party creditor who is not a party thereto in relation to issues not resolved by the contest which evolved in that action. It is suggested that the creditors with constructive notice of the prior action should have intervened. (See *Thorman* v. *Dome Producing etc. Co.* (1942) 50 Cal.App.2d 201 [122 P.2d 927].) The question, however, is not whether they could have intervened, but rather, having failed to intervene, to what extent are the Districts bound by the judgment in the prior action. As noted, the determination of the issues in the prior action did not resolve all of the matters now asserted by the creditors.

It must be acknowledged that the Districts' dogged attempts to establish, through the premarital negotiations and the text of the unexecuted agreement, an understanding that Rose would hold the property for Landier tended to obscure other theories which they advanced. For example, the proposed interrogatories (see fn. 4, *supra*) are not framed to embrace a theory that despite the validity of the transfer between the parties it was void as to creditors, but are designed to elicit answers finding a conveyance upon a secret trust to hold the property for the debtor. This is akin to establishing an equitable asset of the debtor, and the trial court correctly held that the prior judgment cut off any creditor's rights that were dependent on a theory that Landier had some interest in the property (other than by virtue of his appeal, which is hereinafter discussed) which persisted beyond the *lis pendens* and subsequent judgment.

In fact, this concentration on the one theory brings this case close to the orbit of *Winberry* v. *Lopez* (1960) 178 Cal.App.2d 672 [3 Cal.Rptr. 245] and *Haskins* v. *Certified Escrow & Mtg. Co.* (1950) 96 Cal.App.2d 688 [216 P.2d 90] wherein it is held that where the case is tried on the theory of actual fraud (Civ. Code, § 3439.07), the creditor cannot subse-

quently claim constructive fraud predicated upon insolvency and lack of fair consideration (*id.*, § 3439.04).

The record reflects however that the Districts alleged that the transfer of the ranch resulted in the insolvency of Landier and the Company, and ''that no true equitable consideration passed to support her [Rose's] claim of ownership; but in fact no more than a token consideration if, indeed, any passed at all.'' The Districts offered an instruction embodying the language of section 3439.04 of the Civil Code which of course proved superfluous in view of the court's decision that there were no issues to present to the jury. Furthermore, the court did make findings on the factual issues despite its aforementioned conclusion that the prior judgment precluded inquiry into some of these issues.

These findings recite: ''In said quiet title action in Mendocino County (number 21860), there was introduced in evidence an unexecuted draft of an agreement between Landier and Rose calling for Landier and Company to transfer the title to the Landier Capistran Ranch to Rose. No conduct of Rose in connection with said unexecuted draft of an agreement or in connection with her quiet title action was in fraud of the rights of Landier or Company or in fraud of the rights of Districts. Her claim to ownership of the Landier Capistran Ranch, asserted in said quiet title action, was supported by good and adequate consideration. The preparation of the unexecuted draft of the agreement calling for the conveyance of title to the Landier Capistran Ranch to be made from Company to Rose was not done either by Company, Landier or Rose fraudulently or pursuant to a conspiracy or for the purpose of defrauding, deceiving, hindering or delaying Districts. It is not true that either Company or Landier was insolvent at the time that the quiet title action judgment was entered, nor is it true that either of them was rendered insolvent as a result of the judgment entered in favor of Rose in said quiet title action and it is not true that the entry of said judgment deprived the Districts of the principal asset of Landier or Company for the satisfaction of their judgment. It is not true that Districts have been damaged in a sum representing the gross income from said Landier Capistran Ranch since April 16, 1958, nor is it true that Districts have been damaged in any other sum, nor is it true that said School Districts have been damaged at all.'' These findings if supported by any evidence sustain the judgment of the trial court. (*Pope* v. *National Aero Finance Co.* (1965) 236 Cal.App.2d 722, 730

[46 Cal.Rptr. 233] ; *T W M Homes, Inc.* v. *Atherwood Realty & Inv. Co., supra,* 214 Cal.App.2d 826, 842.)

The record reflects that before the marriage ceremony Rose sat in on conferences wherein Landier and his attorney discussed the question of avoiding the loss of the ranch in the event the Districts should seek to levy on it in satisfaction of their claims. There is no evidence to show that she participated in the preparation of the draft of the agreement referred to in the findings. Although it may have been prepared by the attorney for the purpose of defeating Landier's creditors, as well as to give Rose some security for funds advanced before and for funds she was about to advance, it was not satisfactory to either party and was never executed by either. In the original action brought by Rose she did not rely upon the draft of the agreement but upon an alleged oral agreement with Landier. The unexecuted draft of this agreement is a red herring, the scent of which has led the Districts' bird dog away from the covert in which the true game is hiding. The findings which refer to its use, as distinguished from its preparation, are sustained by the evidence.

The finding that no conduct of Rose in connection with her quiet title action was in fraud of the rights of Landier is sustained by the judgment in the adversary proceedings between those parties where Landier had an opportunity to raise any claim that he had to the property and in fact asserted unsuccessfully that he had only agreed to give Rose a security interest in the property.

The finding that no conduct of Rose in connection with her quiet title action was in fraud of the rights of the Company is not so readily sustained. The findings and judgment purport to bind the Company in spite of the questionable propriety of the conveyance of corporate assets for a consideration which apparently flowed, not to the Company, but to its principal stockholder. (Cf. *Miller* v. *Turner* (1932) 121 Cal.App. 365, 367 [8 P.2d 1057].) Further consideration of whether the judgment could be set aside at the behest of a creditor need not be pursued because of considerations hereinafter set forth. It may be assumed that this finding is also sustained by the prior judgment.

The finding that no conduct of Rose in connection with her quiet title action was in fraud of the rights of the Districts requires further analysis. If it refers to a violation of a secret trust with Landier it is sustained by the prior judgment. If it refers to the enforcement of an agreement which was entered

into with actual intent to hinder, delay, or defraud creditors (Civ. Code, § 3439.07) despite the consideration promised and paid (see *Rossen* v. *Villanueva, supra,* 175 Cal. 632, 636; *Cioli* v. *Kenurgios, supra,* 59 Cal.App. 690, 697) it is sustained, but only on conflicting evidence. The record contains evidence that the agreement to convey was conceived in sin through discussions aimed not only at securing a further advance from Rose but also at isolating the ranch from the claims of Landier's creditors. On the other hand the testimony of Rose indicates that she was merely a bystander at these discussions, that she had no part in the preparation of the draft of the agreement, and that the agreement upon which she prevailed in the prior action was independently conceived as the result of separate negotiations after the marriage ceremony. A finding against actual fraud of creditors may be sustained on conflicting evidence.

If this finding refers to the enforcement of an agreement to convey property without a fair consideration, and to thereby render the debtors insolvent (Civ. Code, § 3439.04), attention must be directed to the findings and the evidence on those matters.

The findings recite that Rose's claim to ownership of the ranch, "asserted in said quiet title action, was supported by good and adequate consideration." As noted, the creditors are entitled to an independent evaluation as to whether the transfer satisfies the provisions of section 3439.03 of the Civil Code which defines "fair consideration" as used in section 3439.04, as follows: "Fair consideration is given for property, or obligation: (a) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, . . ." If it be assumed that the court's findings were not merely predicated on the prior judgment, but were designed to meet the allegations of the cross-complaint and the requirements of the foregoing section, the evidence must be examined for support of the findings.

There is little dispute as to the value of the property conveyed and the antecedent debt satisfied by Rose in exchange for the debtors' obligation to convey the ranch which was ordered specifically performed in the prior quiet title action.

In her deposition, which was used in the trial of this action, Rose testified that the new bank loan, which was effectuated in January 1958 pursuant to the agreement, was for $36,000 or $36,500, and that the net proceeds were turned over to Landier and applied to his personal obligation to the bank; that he had

also received $2,700, representing the proceeds of the sale of a portion of her San Mateo property which had been condemned, $1,800 from the sale of her car, and a few hundred dollars from the sale of her furniture.

Landier's attorney testified that all of the obligations of which he was advised came to about $42,000, and that he arbitrarily added to this figure the $75,000 equity Rose had in her San Mateo property before the January 1958 borrowing to arrive at a sum of $117,000 which he used in the unexecuted draft of agreement.

The records of Rose's action against Landier reflect that in her complaint she alleged that Landier agreed to transfer the ranch, subject to $56,000 due Honor, for $29,500 to be raised, and which was in fact raised on Rose's property. Landier, by answer, admitted the receipt of that sum but claimed it was merely a loan to be secured by a second deed of trust on the ranch. The evidence showed that at the time a new loan was placed against Rose's property for $36,000, of which $10,300 went to pay off a prior loan (apparently secured to assist Landier and the Company in making the October 1956 payment to the Districts, but offset in part by $8,000 which Landier had theretofore placed in Rose's account and which was used to pay off a $5,900 earlier encumbrance which Rose alone had incurred). Of the balance $21,200 went to reduce Landier's personal bank loan, and $4,500 was deposited in Landier's personal account and was apparently used up in living and other expenses. Landier conceded he probably owed her $39,000 or $39,500. The court's decision referred to advances from plaintiff of some $35,700, and the findings echoed the $29,500 alleged in the complaint.

In summary the total consideration given for the ranch, subject to Honor's lien, by Rose, did not exceed at the most $42,000 of which $25,700 was paid to Landier at the time of the creation of the debtors' obligation to convey, $10,300 represented satisfaction of an antecedent debt which could be attributed to both Landier and the Company, and the balance was in satisfaction of any obligation which might have existed for sums theretofore advanced to Landier personally.

The value of the ranch, and the resulting equity therein which Rose received in exchange for the foregoing is not so clear. Her opinion was that it had a gross fair market value of $200,000, "maybe," at the time of the agreement to secure the funds for Landier. By affidavit in the divorce papers she

stated that Landier had separate real estate of a value of $450,000.

According to Landier's attorney the ranch was given a value of from $200,000 to $300,000 over and above Honor's lien at the time of the discussion at the end of 1957. Landier in his financial statement of November 1957 and in his testimony gave it a gross value of $375,000. The attorney further revealed that after the Districts filed their abstract of judgment, but before the trial of the first quiet title suit, Rose offered to hold one-half of the ranch for Landier if he would permit her to take judgment and pay her $60,000. At the first trial, Rose testified that she had seen or heard that the ranch was on the corporate books for $78,000 but she acknowledged that it had been listed for sale at $250,000.

During the pendency of the first quiet title suit Landier was attempting to realize something from the ranch presumably with the intention of effecting a settlement with Rose. In July 1958 a lease with an option for sale at a price of $300,000 was executed with one Bosworth. The following month he deeded the ranch to one Burnette for a consideration, which he testified in the earlier action represented $100,000 in excess of what was necessary to satisfy the claims of Honor and Rose.

In November 1959 an agreement of sale was executed with other parties for a total price of $350,000. One of these parties, one Lyon, testified that a deed was received from Burnette on payment of $6,000 and that the ultimate consideration was to be $265,000. At that time Landier and Stearns were trying to get $125,000 for themselves and pay off Honor and Rose and the back taxes. At the end of 1959 Rose considered sale of her interest at $49,000, but the following summer she wanted $60,000, and later her attorney requested $100,000. (A decision was rendered for Rose in June 1959, findings were signed and filed November 1959, but judgment was not entered until December 30, 1960.) This same witness testified that in April 1963, before the trial in this action, Rose and Stearns each wanted $100,000 for a one-half interest.

Stearns testified that the Districts' judgment of $330,000 was probably twice what the property was worth. He found Rose was asking $125,000 for her interest at the end of 1960.

A little over three years after the original agreement there were accrued back taxes of $14,000, and payments due Honor for 17 months in the sum of $3,400. Foreclosure under Honor's deed of trust was imminent and Rose gave Stearns a one-half interest for an advance of $25,000, to be repaid without interest out of her share of the proceeds of any sale of the

ranch and such further sums, to be repaid with interest, as might be necessary to clear off accrued taxes, which were placed on a five-year plan, and other junior liens. At this time Stearns estimated that if Honor's foreclosure proceeded, the property would bring $125,000 at a forced sale, of which $15,000 would go for delinquent taxes, and $55,000 to Honor, leaving about $55,000 for Rose.

The only evidence which impeaches Rose's admission that the property was worth $200,000 in January 1958 is that concerning its value years later when subject to delinquent taxes and threat of foreclosure. Although there are no specific appraisals, or other satisfactory evidence of value the issue was raised and some evidence was produced. The court could not disregard this evidence in determining the issue. ▮▮▮ It is obvious from the foregoing that the exchange of $42,000 for a $144,000 equity in a $200,000 ranch is not fair consideration within the meaning of sections 3439.03 and 3439.04 of the Civil Code. (*Patterson* v. *Missler, supra,* 238 Cal.App.2d 759, 765-769; *Bailey* v. *Leeper, supra,* 142 Cal.App.2d 460, 462-464.) Furthermore, since the Company itself received only $10,300 in return for the conveyance of the ranch, the discrepancy is more marked. It is questionable whether the transferee can consider the payment of an obligation to another as fair consideration for property received from the debtor. (See *Hansen* v. *Cramer* (1952) 39 Cal.2d 321, 325 [245 P.2d 1059, 30 A.L.R.2d 1204].) The finding of the court that Rose's claim to ownership of the ranch "was supported by good and adequate consideration" if considered as a finding that she gave "fair consideration" in exchange for the ranch, insofar as creditors of Landier or the Company are concerned, is not supported by the evidence.

The remaining pertinent finding is that which recites "It is not true that either Company or Landier was insolvent at the time that the quiet title action judgment was entered, nor is it true that either of them was rendered insolvent as a result of the judgment entered in favor of Rose in said quiet title action and it is not true that the entry of said judgment deprived the Districts of the principal asset of Landier or Company for the satisfaction of their judgment."

Insolvency is defined as follows: "A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." (Civ. Code, § 3439.02, subd. (a).)

The record reflects that Landier and the Company were unable to meet the payment due the Districts in October 1957. If the financial statement[5] furnished at that time be taken at its face value the saleable value of his assets was greater than his probable liabilities. The same thing was true as of January 1, 1958, even though he was apparently some $21,000 undersecured on his bank loan. The effect of the divestiture of the ranch occasioned a profound change in his stated condition. His stated net worth was increased by the sum used to decrease his indebtedness to the bank, by the sum deposited in his commercial account, and by the fact that Rose took the property subject to the $56,000 obligation to Honor, but it was decreased by the sum of $375,000. It therefore plummeted from a comfortable $227,625 to [$65,675]. He was insolvent by his statement but the value of his remaining assets must be considered in the light of the other evidence.

Affidavits filed in the divorce proceedings reflect that on April 15, 1958, Rose deposed that Landier had assets of $549,400 consisting of $450,000 real estate, $92,000 stocks, etc., and $7,400 value of automobiles. Landier's affidavit dated May 12, 1958 reflects real estate $3,000, listed stocks $82,000, and cash of $1,500 for a total of $86,500, subject to a $122,000 loan from the bank. He further disclosed his ownership of the stock of the Company, its ownership of the ranch, the indebtedness to Honor secured thereby, and the amount due on the stipulation to the Districts and the pending consequences of a default. He stated the value of the ranch was dependent on his ability to sell the ranch and cure the default before extension

[5]"ASSETS

| | |
|---|---|
| Capistran Ranch—11,759 acres, Covelo, California | $375,000.00 |
| Ranch Equipment | 45,000.00 |
| (Tractor D-8; Grader; Austin-Western—3 trucks, Air Compressor, Misc. Ranch Equipment) | |
| 1200 shares Lever Brothers at $45. | 54,000.00 |
| 400 shares Ford Motor at $45. | 18,000.00 |
| 2000 Laguna Oil Co. at $5. | 10,000.00 |
| Home—Seal Harbor, Maine | 27,000.00 |
| Timber suit Landier Investment Co. vs. M. W. Hotchkiss, et al, Mendocino County #21571 | 40,625.00 |
| Total Assets | $569,625.00 |

LIABILITIES

| | |
|---|---|
| Bank Loan | 122,000.00 |
| Money due Honor Landier | 56,000.00 |
| Balance due Board of Education | 164,000.00 |
| Total Liabilities | $227,625.00 |
| | [sic $342,000.00] |

NET WORTH..........$227,625.00"

expired. As of that date the Maine property had been sold and the proceeds remaining were reflected by the $1,500 cash. At the same time Rose filed her suit to divest Landier of the ranch.

It must be conceded that after the exchange of the ranch its value was no longer available as an asset of Landier. Inquiry into his attempts to deal with it to raise money produced evidence that he had no other source of income than what would be realized from the sale to Burnette if Rose was unsuccessful in her suit for specific performance.

The ranch equipment stated to be of a value of $45,000 was given a sale price of $27,000 in November 1959. In 1961 Landier was trying to get $8,000 for Burnette on account of the ranch equipment. The $82,000 of stocks was liquidated to satisfy the indebtedness of $122,000 as reduced to approximately $100,000 by the January transaction. The home in Seal Harbor was liquidated by sale March 15, 1958, for an indicated net consideration of $6,000. The lawsuit valued at $40,625 was settled for $750.

Reduced to their essentials the facts disclose that the exchange, which was subsequently sanctioned by the court action, left Landier with ranch equipment of questionable value, an out-of-state asset not available to local creditors (see *Wight* v. *Rohlffs* (1941) 48 Cal.App.2d 696, 703-708 [121 P.2d 76]);[6] a lawsuit which ultimately proved to have but nominal value. Against these sums was an existing obligation of $165,485.53 which would ripen into an obligation for $330,971.06 unless $33,097.11 was paid by July 30, 1958.

The burden of proving insolvency was on the creditors. (*Costello* v. *Poole* (1963) 217 Cal.App.2d 556, 559 [31 Cal.Rptr. 755]; *Miller* v. *Keegan* (1949) 92 Cal.App.2d 846, 851 [207 P.2d 1073].) In the last cited case the opinion states: "As a general rule 'solvency and not insolvency is presumed.' (*Hasenjeager* v. *Voth*, 91 Cal.App. 394, 397 [267 P. 146].) To overcome this presumption a fair interpretation of the statute requires some basis in evidence for determining that the amount of the debtor's obligations exceeded the then present fair salable value of his non-exempt assets." (92 Cal. App.2d at p. 852; accord, *T W M Homes, Inc.* v. *Atherwood Realty & Inv. Co., supra,* 214 Cal.App.2d 826, 847.) The admis-

---

[6]The Nevada property, the existence of which is suggested by its mention with the Maine property at an aggregate value of $22,000 in the unexecuted draft of agreement, would similarly be unavailable to local creditors.

sions, as distinguished from the testimony of the debtor, cannot be used against the transferee to establish the former's insolvency. (*T W M Homes, Inc.* v. *Atherwood Realty & Inv. Co., supra,* 214 Cal.App.2d 826, 848; *Miller* v. *Keegan, supra,* 92 Cal.App.2d 846, 852.) ▮ "Neither a failure to meet credit obligations nor an inability to pay bills because of lack of ready cash is sufficient, standing alone, to warrant a conclusion of insolvency, nor is either circumstance necessarily inconsistent with solvency. (*Miller* v. *Keegan, supra.*) ▮ Since insolvency must exist at the time of the conveyance or must result therefrom, subsequent insolvency is not of itself a sufficient foundation for an inference of insolvency at the time of the conveyance. [Citations.]" (*T W M Homes, Inc.* v. *Atherwood Realty & Inv. Co., supra,* 214 Cal.App.2d at p. 847.)

▮ In the instant case the statements of the debtor concerning the nature of his assets and liabilities was corroborated by his testimony and that of his attorney and there is direct evidence bearing on the value of the assets. (*See Patterson* v. *Missler, supra,* 238 Cal.App.2d 759, 765; and *Costello* v. *Poole, supra,* 217 Cal.App.2d 556, 559; and cf. *Aggregates Assoc. Inc.* v. *Packwood* (1962) 58 Cal.2d 580, 589 [25 Cal. Rptr. 545, 375 P.2d 425]; *T W M Homes, Inc.* v. *Atherwood Realty & Inv. Co., supra,* 214 Cal.App.2d 826, 848; and *Miller* v. *Keegan, supra,* 92 Cal.App.2d 846, 852, wherein no such evidence was in the record.)

▮ In the light of the facts referred to above, and particularly since there was no asset on which the debtor could raise the $33,000 necessary to keep his interest from being in default, the presumption is dispelled and cannot support the finding of the trial court.

Since the evidence reflects an exchange which violates section 3439.04, the judgment must be reversed. (*Hansen* v. *Cramer, supra,* 39 Cal.2d 321, 325; *Dunlap* v. *Hood* (1942) 55 Cal.App.2d 97, 103 [130 P.2d 208]; *Wight* v. *Rohlffs, supra,* 48 Cal.App.2d 696, 708.) *Wight* suggests that the reversal be with directions for judgment for the creditor. (48 Cal.App.2d at p. 708.) ▮ The posture of this case leaves it unclear whether there was proper consideration given to the matters herein discussed or whether they were treated as precluded from consideration by the earlier judgment. The situation is akin to that where a nonsuit or directed verdict has been erroneously granted and the matter should properly be set at large. (See *Hansen* v. *Cramer, supra,* 39 Cal.2d at p. 325.) Furthermore, if the creditor is entitled to have the conveyance set aside to the extent necssary to satisfy his claim (Civ.

Code, § 3439.03, subd. (a)), the transferees are entitled to a determination of whether they are entitled to any repayment. (*Id.*, subd. (b) ; and see *Patterson* v. *Missler, supra,* 238 Cal. App.2d 759, 770-774.)

### Failure to follow the verdict rendered against Stearns

The jury returned the following finding on the loan interrogatory submitted to it : ''We, the jury empaneled to try the above cause hereby make our special finding as follows :

''Is there any agreement between Felicien P. Landier and Francis A. Stearns whereby the one-half interest in the ranch acquired by Stearns should benefit Landier?

''Yes : __X__ No : ____''

The evidence was sufficient to sustain this finding as Stearns admittedly was attempting to help Landier out when he first intervened to prevent the Champlin sale under Honor's deed of trust. According to Stearns his approach changed and he dealt for his own account after ascertaining that any interest salvaged for Landier would fall prey to the Districts' execution. The jury chose to disregard this explanation.

 The Districts' complaint that the court erred in not following the jury verdict cannot be sustained. The authorities which have been referred to above in connection with the refusal to submit to the jury the interrogatories relating to the first cause of action demonstrate that the court is free to follow its own interpretation of the evidence, and that no error can be predicated on its refusal to follow the advisory verdict of the jury.

The Districts further assert that the findings of the court in favor of the plaintiffs are not sustained by the evidence. The court expressly found : ''Stearns negotiated with Rose for the transfer to him of title to an undivided one-half interest in said Landier Capistran Ranch. On March 20, 1961, Rose conveyed the title to the Landier Capistran Ranch to Redwood Empire Title Company of Mendocino County, pursuant to an agreement whereby Redwood Empire Title Company of Mendocino County would hold title to the ranch for the use and benefit of Rose and Stearns, in equal, undivided interests. In acquiring said one-half interest in the Landier Capistran Ranch from Rose, Stearns was acting on his own behalf and not on behalf of Landier or Company and Rose had no knowledge of any interest that Landier or Company might have had in Stearns' acquisition of said one-half interest.''

The record reflects that there is ample evidence to demonstrate that Stearns, despite his prior attempts to clear Landier's title and to salvage something for him, ultimately abandoned those attempts and undertook to and did acquire an interest in the ranch for his own account through Rose. The case against Stearns does not depend upon any conveyance from Landier to Stearns. The burden was on the Districts to establish that there was an agreement whereby Stearns would hold what he acquired for Landier.

Concededly, he was at one time working to clear the title so that Landier could complete the proposed sale to Lyon and his group and they both would profit. One step in this process was the prevention of the threatened foreclosure under Honor's deed of trust. The questions of whether or not Stearns' acts in securing control of this foreclosure from Honor's original assignee was in her best interest, and whether Honor received adequate consideration when she ultimately sold her claims to Stearns' daughter, do not furnish guideposts to determine whether Stearns was acting for his own account or for himself and Landier.

When it was subsequently ascertained that it was impossible to salvage anything from Landier without losing it to the Districts, Stearns was warranted in going ahead for his own account. There is evidence to show that he in fact did so proceed to protect the investment he had made. He drove a hard bargain with Rose by threatening her with foreclosure. He also avoided his agreement with the original assignee of Honor's claim by controlling and cancelling the proceedings to foreclose the deed of trust and by acquiring an interest in the ranch under Rose's title. These facts, however, like his dealings with Honor, cannot be determinative on the issue of whether he was acting for himself as a shrewd and sagacious dealer in real estate, or as a good Samaritan attempting to salvage something for a friend.

There remains for consideration the effect of Stearns' acts in securing the dismissal of Landier's appeal.[7] The court expressly found that there was consideration for the dismissal flowing from Rose to Landier because she surrendered claims for (1) unpaid alimony, (2) income from the property received by Landier and the Company during a period Rose was

[7]The Districts expressly disclaimed that there was any new agreement between Rose and Landier at the time the latter authorized the dismissal of the appeal.

entitled to possession, (3) proceeds of the sale of timber received during the same period, (4) the value of her personal property which Landier had taken, and (5) slander of title by reason of activities of Landier and the Company. The Districts allege that the record compels the conclusion that Stearns induced Landier to dismiss the appeal so that the one-half interest which Stearns was acquiring from Rose would be free of the claims outstanding by virtue of the appeal of Landier and the Company, and the possible claims of their creditors; and that it must be inferred that it was agreed the interest so perfected would be held by Stearns for Landier (presumably subject to a right to reimbursement for advances made to perfect the title). Although the dismissal and other circumstances might justify such a conclusion as embodied in the verdict of the jury, they do not compel such a result. The unequivocal denials of Stearns and Landier, and other circumstances, support the findings of the court.

The findings further recite: ''It is not true that the appeal was dismissed for the purpose of insulating any interest in the Landier Capistran Ranch from the reach of Districts, but said dismissal was made pursuant to an agreement between Landier and Company and Rose, which agreement was supported by good and sufficient consideration. It is not true that the appeal taken by Landier and Company from the quiet title judgment was dismissed by them with intent to hinder, delay or defraud Districts, or any other of their creditors, nor is it true that either of them was insolvent at the time that said appeal was dismissed, nor is it true that the dismissal of said appeal rendered either of them insolvent.''

It may be argued that the appeal was dismissed for the purpose of insulating any interest in the ranch from the reach of the Districts and with the intent to hinder and delay the Districts as a creditor of Landier and the Company. The dismissal of the appeal did not render Landier or the Company insolvent, rather it was the agreement allegedly made in January 1958. Prior to the dismissal the debtors may have had a hope or an expectancy that the prior judgment and the agreement which it confirmed would be upset. There is no showing that such interest in the ranch had any appealable market value of which the debtors were then deprived. Whether or not the debtors were then solvent or insolvent is immaterial if the dismissal did not affect that status. No case for the application of the principles of section 3439.04 or section 3439.07 of the Civil Code was shown.

*The property covered by the prior
and present action*

The court found that the description in the complaint filed and in the *lis pendens* which was recorded on April 16, 1958 in the earlier quiet title action between Rose and Landier failed to include 1,300 acres of the ranch, and that the final judgment in that action did include the entire description. It further found, as follows, in reference to this discrepancy: "The 1,300 acres of land described in the judgment and not described in the complaint or notice of lis pendens was, at the time that the notice of lis pendens was recorded and at all times thereafter, actually a part of the real property commonly known as 'Landier Capistran Ranch', was then owned by Landier and Company, was adjacent to the land described in the notice of lis pendens, and, with the land described in the notice of lis pendens, was used and operated as one unit. The description used in said notice of lis pendens would have had the effect of advising persons reading the notice of lis pendens that the 1,300 acres of land described in Exhibit 'A' but not described in Exhibit 'B' might be and probably was a portion of the lands involved in said quiet title litigation."

The Districts attack this finding and insist that the recording of their abstract of judgment November 21, 1958, before the entry of judgment December 30, 1960 in the earlier quiet title action, gives them the right to review all of the negotiations and dealings between Rose and Landier free of any claim of res judicata from the prior action insofar as the 1,300 acres is concerned.

In view of what has been concluded above the question is only material on the issue of whether or not a secret trust existed between Rose and Landier. It appears that principles of collateral estoppel would bar the Districts as successors in interest to Landier as effectively as, but no more than, principles of res judicata bar them as to the property which was included in the description. (See *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 604 [24 Cal. Rptr. 559, 375 P.2d 439].)

Respondents point out that the notice referred to "All that certain real property situate in said County of Mendocino, State of California, commonly known as 'LANDIER CAPISTRAN RANCH', the same being also described as follows: . . ." The reference to the ranch by general description may well give constructive notice. There was testimony to show that the location, ownership, and use of the 1,300 acres were such as to

make them an integral part of the one ranch which was but incompletely described by metes and bounds. ▪·The court's findings of fact were supported and the law recognizes that a description which upon inquiry would lead to ascertainment of the identity of the property involved in the litigation is sufficient to give notice. (*McLean* v. *Baldwin* (1902) 136 Cal. 565, 568 [69 P. 259]; cf. *Davis* v. *Ward* (1895) 109 Cal. 186, 188-189 [41 P. 1010, 50 Am.St.Rep. 29], and the qualification thereof in *Gray* v. *Maier & Zobelin Brewery* (1906) 2 Cal.App. 653, 656 [84 P. 280].)

There was no error in including all of the ranch within the scope of the current action.

### The grant of injunctive relief

Findings of fact and conclusions of law were filed May 21, 1964, and a judgment was signed and filed the following day. The Districts interposed their motion for a new trial on June 1, 1964. Thereafter Rose, on the one hand, and Stearns and Redwood on the other, each filed proceedings to secure amendment of the judgment to add a provision enjoining the Districts and defendant Burnette from ''maintaining any action having as its object the assertion of any right, . . . in or to the said real property, or any parcel or part thereof, adverse to the said plaintiffs.''

These proceedings took the form of motions for an order vacating the judgment and entering a different judgment pursuant to the provisions of section 663 of the Code of Civil Procedure, motions for an order modifying judgment pursuant to the provisions of section 473 of the Code of Civil Procedure, and motions for a new trial pursuant to section 657 of that code in which each prayed for modification of the judgment pursuant to the provisions of section 662. These motions were supported by the declarations of counsel in which each claimed excusable neglect in failing to present the matter of an injunction in connection with the settlement of findings and proposed judgment.

On June 19, 1964, the court ordered the conclusions of law amended as requested by plaintiffs and signed an amended judgment adding the same relief. This judgment was filed June 23, 1964. The Districts' motion for a new trial was denied on July 6, 1964, and this appeal ensued.

The Districts' attack on this amendment of the judgment is threefold: first, that the court had no power to modify the judgment; second, that it could not so modify the judgment in

the absence of a prayer for such relief; and, third, that in any event it erred in enjoining the prosecution of an action which had been commenced prior to the instant case.

They claim that the mention of the Los Angeles County action was designedly delayed, and that there was no excusable neglect in raising the issue of what should be done in reference to it. This overlooks the fact that the Districts raised the pendency of that action as their first affirmative defense. Although the trial court had passed on the matter in the motions which have been heretofore discussed, it was an issue that properly could be dealt with in the conclusions of law and judgment. It is unnecessary to decide whether the court's action must rest on the provisions of section 473, of section 663, or of sections 657 and 662 of the Code of Civil Procedure. Each of the motions was interposed in a timely manner, and there were grounds for making the amendment. (Cf. *Jacuzzi* v. *Jacuzzi Bros., Inc.* (1966) 243 Cal.App.2d 1, 10-27 [52 Cal. Rptr. 147].)

The Districts' objection that the complaint does not contain a prayer for injunctive relief is answered as follows: "The judgment not only quiets plaintiff's title, but also enjoins appellant from doing certain acts; and appellant contends that the injunction was erroneous because no injunction was prayed for in the complaint, and no facts are alleged which would support an injunction. So far as the prayer is concerned the general prayer for relief is sufficient, and the facts alleged warranted an injunction, so that this contention cannot be maintained." (*City of Los Angeles* v. *Los Angeles Farming & Mill. Co.* (1908) 152 Cal. 645, 653 [93 P. 869].)

Of more serious concern is the fact that the judgment by its terms would restrain the further prosecution of the prior Los Angeles County action. (*Taylor* v. *Hawley* (1935) 6 Cal.App. 2d 576, 580 [45 P.2d 226]; and see *Wolf* v *Gall* (1916) 174 Cal. 140, 145 [162 P. 115].) In *Taylor* the record reflected that there was a prior suit involving the same issues. That court pointed out, however, that the defendants who were enjoined had not—as was done in this case—alleged the prior action as a bar.

The general rule is that one court cannot enjoin the prosecution of an action that is pending in a court of concurrent jurisdiction. (Civ. Code, § 3423, subd. First; Code Civ. Proc., § 526, second part, subd. 1; *Wright* v. *Superior Court* (1903) 139 Cal. 469, 475 [73 P. 145]; *Associated Plumbing Contractors of Marin etc. Counties, Inc.* v. *F. W. Spencer &*

*Son, Inc.* (1963) 213 Cal.App.2d 1, 7 [28 Cal.Rptr. 425]; *Wright* v. *Superior Court* (1941) 43 Cal.App.2d 181, 183 [110 P.2d 529]; and see *Verdier* v. *Verdier* (1962) 203 Cal.App.2d 724, 737 [22 Cal.Rptr. 93].) The statutory exception which is recognized by the cases applies where the restraint is necessary to prevent multiplicity of actions. The question posed, therefore, is whether the trial court in the instant case can disregard the Districts' plea for a stay of proceedings, and then later assert that the prior action constitutes multiplicity of proceedings. Assuming it can, one court must decide whether the issues raised and decided in the second action bar the first action. The trial court herein, in vacating the stay, took the position that there were issues which could only be resolved in Mendocino County. Whether there were or were not issues remaining in Los Angeles County, if a valid judgment had been rendered herein, would more properly be determined by that court. (See *Wright* v. *Superior Court, supra,* 43 Cal.App.2d 181, 183.) In *Dorris* v. *McManus, supra,* 3 Cal.App. 576, the appellate court refused to consider the propriety of the trial court's injunction in regard to another suit. It left the effect of the injunction to be determined in any other litigation between the parties. (3 Cal.App. at p. 582.) This procedure imposes an unwarranted burden of risking contempt on the party which commenced the first suit. (Cf. *Wolf* v. *Gall, supra,* 174 Cal. 140.)

It was error to word the injunction so broadly as to restrain the prosecution of the action already pending as distinguished from any action antedating the present one. Any judgment properly obtained in this action could be presented in the prior action for a determination of its effect on the issues pending therein.

### Conclusion

The court having erred in the effect it gave to the prior judgment between Landier and Rose, the judgment must be reversed. Stearns admittedly took under Rose's title with notice of its alleged infirmities. In February 1961 when he was still attempting to develop Landier's title, then held by Burnette, Stearns wrote the latter's attorney suggesting that if Burnette's interest were conveyed to him upon a contingent payment he would employ the attorney to attack Rose's judgment. The judgment must, therefore, also be reversed as to him and Redwood despite the findings in his favor on the second cause of action in the cross-complaint.

The court also having erred in vacating the stay of the Mendocino County proceedings pending disposition of the Los Angeles County action, the vacating order must also be set aside. On remand the Mendocino County action will remain stayed pursuant to the original order so providing, subject to modification or vacation only on principles and facts which are not inconsistent with those set forth in this opinion.

The purported appeal from the original judgment entered May 22, 1964 is dismissed, it having been properly superseded by the amended judgment. The amended judgment dated June 19, 1964, and filed June 23, 1964, is reversed with instructions to set aside the order vacating stay of proceedings dated November 7, 1962, and filed November 13, 1962. Appellants to recover costs on appeal.

Sullivan, P. J., and Molinari, J., concurred.

The petition of the plaintiffs, cross-defendants and respondents for a hearing by the Supreme Court was denied November 2, 1966.